# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No.10-3031

KHADIJAH EL-AMIN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 15, 2012                           Decided January 15, 2013)

*Martin V. Totaro,* of Washington, D.C., with whom *Barbara A. Curran*, of Livingston, New Jersey, was on the brief, for the appellant.

*Dustin P. Elias,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Nisha C. Wagle*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and MOORMAN, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court.  KASOLD, *Chief Judge*, filed a dissenting opinion.

HAGEL, *Judge*: On May 17, 2012, the Court issued a memorandum decision affirming an August 16, 2010, Board of Veterans' Appeals (Board) decision that denied Khadijah El-Amin entitlement to VA benefits for the cause of her husband's death.  On June 6, 2012, Mrs. El-Amin, through counsel, filed a motion for reconsideration or, in the alternative, a decision by a three-judge panel.  On August 29, 2012, the matter was submitted to a panel of the Court and oral argument was held on November 15, 2012.  The Court will withdraw the May 17, 2012, memorandum decision and issue this opinion in its stead.

The precise question for the panel is whether a VA examiner's statement that deceased veteran Khalil El-Amin's alcoholism was "related to" factors other than his service-connected post-traumatic stress disorder is sufficient to permit the Board to conclude that Mr. El-Amin's service-

connected post-traumatic stress disorder did not aggravate his alcoholism. We conclude that it is not. Further, we find that the Board erred in relying on an inadequate medical opinion to conclude that Mr. El-Amin's non-service-connected alcoholism was not aggravated by his service-connected post-traumatic stress disorder. Accordingly, the Court will vacate the August 2010 Board decision and remand the matter for further development and readjudication consistent with this decision.

## I. FACTS

Mr. El-Amin served on active duty in the U.S. Marine Corps from September 1966 to May 1969, including service in Viet Nam. The record reflects that, during his lifetime, Mr. El-Amin was diagnosed with and treated for drug and alcohol abuse and hepatitis C, none of which was ever determined to be connected to his military service.

Mr. El-Amin died in October 2006, and his death certificate lists the cause of death as hepatic cirrhosis. At the time of his death, Mr. El-Amin was in receipt of VA disability benefits for post-traumatic stress disorder, with a 70% disability rating. Mrs. El-Amin seeks benefits for the cause of her husband's death, asserting that Mr. El-Amin's service-connected post-traumatic stress disorder either caused or aggravated his alcoholism, which in turn led to the cirrhosis that caused his death.

In the August 2010 decision on appeal, the Board denied Mrs. El-Amin's claim on the basis that there is no evidence that Mr. El-Amin's death was a result of any service-connected condition. The decision was based almost exclusively on an October 2008 VA medical opinion, which was based on a records review, in which the examiner stated:

> [I]t is this examiner's conclusion that there is no confirmatory or supportive evidence that the veteran's post-traumatic stress disorder caused his alcohol abuse, and thus it is NOT at least as likely as not that the veteran's [post-traumatic stress disorder] caused his alcohol abuse. Conversely, it is more likely than not that the veteran's alcohol abuse was related to factors other than the veteran's post-traumatic stress disorder.

Record (R.) at 93. When considering the record evidence, the Board adopted this opinion as the rationale for its decision:

> The Board finds the October 2008 opinion of the VA examiner to be the most probative evidence of record regarding whether [Mr. El-Amin's] cause of death was

2

related to service. The Board notes that there is no medical evidence of record that contradicts the opinion of the examiner.

. . .

Also, the Board acknowledges [Mrs. El-Amin's] contention that [her husband's] service-connected [post-traumatic stress disorder] caused him to drink, which in turn caused or aggravated his cirrhosis. Certainly, [she] is competent to report how much and how often [her husband] was drinking during the marriage. She is not competent, however, to opine as to the cause of [his] addiction to alcohol or his cirrhosis, and, even if the Board found [her] competent in that regard, the Board nevertheless finds the opinion of the October 2008 examiner to be the most probative evidence regarding the relationship between [Mr. El-Amin's] [post-traumatic stress disorder] and cirrhosis.

R. at 11, 12. This appeal followed.

## II. ANALYSIS

### A. Cause of Death and Aggravation

A veteran's death will be considered service connected when a service-connected disability "was either the principal or a contributory cause of death." 38 C.F.R. § 3.312(a) (2012); *see* 38 U.S.C. § 1310. For a service-connected disability to be considered a contributory cause of death, it must be shown that it contributed substantially or materially to the production of death, combined to cause death, or aided or lent assistance to the production of death. 38 C.F.R. § 3.312(c).

In a decision early in its history, the Court determined that "*any additional impairment* of earning capacity resulting from an already service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition, shall be compensated." *Allen v. Brown*, 7 Vet.App. 439, 448 (1995). More specifically, "when aggravation of a veteran's non-service-connected condition is proximately due to or the result of a service-connected condition, such veteran shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation." *Id.* It follows logically from this holding that the "compensation" for such aggravation by the service-connected condition includes the death benefits that Mrs. El-Amin seeks here, if it can be shown that the non-service-connected disability was aggravated to the degree that it contributed substantially or materially to the production of death, combined to cause death, or aided or lent assistance to the

3

production of death.  38 C.F.R. § 3.312(c).  Such a finding would result in an unbroken chain between the service-connected disability and the condition that caused the veteran's death.  Here, for example, the chain would proceed: Mr. El-Amin's service-connected post-traumatic stress disorder aggravated his non-service-connected alcoholism, which caused or contributed to his cirrhosis, which caused his death.

To be sure, the question of whether any aggravation of Mr. El-Amin's non-service-connected alcoholism contributed to his development of cirrhosis is a factual one that has not yet been addressed by the Board.  *See Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the expert [Board], not by the Veterans Court.").  The Board did not reach this question below because the inquiry ended when the Board determined that there was no connection between Mr. El-Amin's service-connected post-traumatic stress disorder and his non-service-connected alcoholism.  At oral argument, however, the Secretary conceded that there is prima facie evidence that Mr. El-Amin's alcoholism caused or contributed to the development of cirrhosis.  On remand, the Board will consider and weigh this evidence in the first instance if it determines that the evidence of aggravation of Mr. El-Amin's alcoholism by his post-traumatic stress disorder weighs in favor of his claim or is in equipoise.  *See* 38 U.S.C. § 5107(b) ("When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.").

### B. Adequacy of Medical Examination

The law regarding adequacy of VA medical examinations is well settled and voluminous. The Secretary's duty to assist a claimant includes, among other things, "providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim."  38 U.S.C. § 5103A(d)(1); 38 C.F.R. § 3.159(c)(4) (2012).  The medical examination provided must be "thorough and contemporaneous" and consider prior medical examinations and treatment.  *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991).  A medical examination is adequate "where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability . . . in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.'" *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007) (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)).  Additionally, a medical

4

examiner must provide a "reasoned medical explanation connecting" his observations and his conclusions. *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 304 (2008) ("It is the factually accurate, fully articulated, sound reasoning for the conclusion . . . that contributes probative value to a medical opinion."). If an examination report does not contain sufficient detail, "it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (2012); *see Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (emphasizing the Board's duty to return inadequate examination report).

Whether a medical opinion is adequate is a finding of fact, which the Court reviews under the "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4); *D'Aries v. Peake*, 22 Vet.App. 97, 103 (2008); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The Board determined that the October 2008 VA medical examination report was adequate because "the examiner reviewed the claims file, provided the requested opinions, and gave adequate rationale for his conclusions." R. at 8. The Court finds the Board's conclusion clearly erroneous.

The October 2008 VA examiner's opinion focuses solely on direct causation, concluding that Mr. El-Amin's post-traumatic stress disorder did not cause his alcoholism. R. at 92-93 ("[T]he examiner found no mental health provider that offered the opinion that the veteran's alcohol dependence or abuse was caused by his post-traumatic stress disorder;" "[I]t is this examiner's conclusion that there is no confirmatory or supportive evidence that the veteran's post-traumatic stress disorder caused his alcohol abuse, and thus it is NOT at least as likely as not that the veteran's [post-traumatic stress disorder] caused his alcohol abuse."). Although the examiner then stated that it was "more likely than not that the veteran's alcohol abuse was *related to* factors other than the veteran's post-traumatic stress disorder," R. at 93 (emphasis added), it is not at all clear to the Court that this encompasses a discussion of aggravation (the theory on which Mrs. El-Amin bases her claim) at all, let alone with respect to post-traumatic stress disorder. It is likewise unclear to the Court how the Board could interpret the examiner's statements as having considered whether Mr. El-Amin's post-traumatic stress disorder aggravated his alcohol abuse. At best, it might be said that

5

the examiner considered and opined that Mr. El-Amin's alcohol abuse was aggravated by (that is, "was related to") "factors other than" post-traumatic stress disorder. R. at 93. This does not rule out the possibility that it was also aggravated to some degree by his post-traumatic stress disorder; the examiner only opined that Mr. El-Amin's alcoholism was not "caused" by his post-traumatic stress disorder. *Id.* This is the only plain statement provided by the examiner with respect to the relationship between Mr. El-Amin's post-traumatic stress disorder and his alcohol abuse. Accordingly, on the question of aggravation, the Board's conclusion that the examination was adequate was clearly erroneous, *see D'Aries*, 22 Vet.App. at 103, and therefore the Board erred in finding that VA satisfied its duty to assist, *see Nolen v. Gober*, 14 Vet.App. 183, 184 (2000).

To be fair to the examiner, however, his focus on direct causation appears to have been driven by the VA inquiry request for the examination. In fact, the examiner opened his examination report by stating that he had been "asked to provide an opinion regarding the cause of death." R. at 92. The inquiry report requested that the examiner "indicate if the veteran's alcohol abuse was related to [his] [post-traumatic stress disorder] or if the alcohol abuse was a separate[,] unrelated disability." R. at 95. This could, perhaps, be interpreted as including a request for an opinion on aggravation, but the inquiry request went on to require that the examiner state his conclusion

> using one of the following legally recognized phrases:
> a) _____ is caused by or a result of _____
> b) _____ is most likely caused by or a result of _____
> c) _____ is at least as likely as not (50/50 probability) caused by or a result of _____
> d) _____ is less likely as not (less than 50/50 probability caused by or a result of _____
> e) is not caused by or a result of _____
> f) I cannot resolve this issue without resort to mere speculation

*Id.* These options do not permit the examiner to opine on any question other than one of direct causation. *Cf. Bielby v. Brown*, 7 Vet.App. 260, 269 (1994) (finding improper the Board's reliance on an independent medical opinion where the Board constrained the scope of inquiry in the engagement letter, thereby "limiting [the examiner's] investigation and tainting the results").

In light of the above discussion, the Court will vacate the Board decision and remand the matter for a new VA medical opinion that considers the relevant evidence of record and expressly opines as to whether Mr. El-Amin's service-connected post-traumatic stress disorder aggravated his

non-service-connected alcohol abuse and, if so, to what degree. If aggravation is found, the Board must then determine whether the degree of aggravation of alcohol abuse caused or contributed to the development of cirrhosis and determine whether a medical opinion is necessary to answer that question. In this regard, the Court notes that the October 2008 VA examiner indicated that he, as a psychologist, was not equipped to render an opinion on that question. Accordingly, the Board should, if it determines that a medical opinion is necessary on this issue, seek the opinion of a qualified medical professional.[1]

As a final matter, the Court notes that the Board also denied entitlement to burial benefits. Although Mrs. El-Amin did not raise any arguments related to that decision in her briefs, because that denial was premised on the Board's finding that Mr. El-Amin's service-connected post-traumatic stress disorder was not a contributory cause of his death, the matters are inextricably intertwined. *See Henderson v. West*, 12 Vet.App. 11, 20 (1998) ("[W]here a decision on one issue would have a 'significant impact' upon another, and that impact in turn 'could render any review by this Court of the decision [on the other claim] meaningless and a waste of judicial resources,' the two claims are inextricably intertwined." (quoting *Harris v. Derwinski*, 1 Vet.App. 180, 183 (1991), *overruled on other grounds by Tyrues v. Shinseki*, 23 Vet.App. 166 (2009) (en banc), *aff'd*, 631 F.3d 1380 (Fed. Cir. 2011); *vacated and remanded*, 132 S. Ct. 75 (2011)); *see also Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (holding that, where the facts underlying two claims are "intimately connected," the interests of judicial economy and of avoiding piecemeal litigation require the claims to be appealed together). Because the Court is remanding Mrs. El-Amin's claim for benefits for the cause of her husband's death, her claim for burial benefits must also be remanded.

On remand, Mrs. El-Amin is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). "A remand is meant to entail a critical examination of the justification for the decision" by the Board. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In

---

[1] To be clear, the Court is not directing the Board to obtain two separate opinions–one on the question of whether Mr. El-Amin's post-traumatic stress disorder aggravated his alcohol abuse and one on the question of whether that aggravation contributed to the development of cirrhosis–as long as the Board seeks a single opinion from *a medical professional qualified to answer both questions*.

addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

As a final matter, the Court feels that it would be remiss if it did not recognize the superior oral advocacy by both counsel in this appeal. Such advocacy, of course, reflects well on these lawyers. More important to the Court, however, is that it permits the Court to consider and decide the key issue or issues presented by the case and to decide them with some dispatch. Despite the outcome of this or other cases, their professionalism serves their clients well and displays respect for and honor to this Court. It further facilitates the delivery of justice in a timely fashion.

### III. CONCLUSION

Upon consideration of the foregoing, the August 16, 2010, Board decision is VACATED and the matters are REMANDED for further development and readjudication consistent with this decision.

KASOLD, *Chief Judge*, dissenting: I issued the single-judge memorandum decision affirming the Board decision that denied Mrs. El-Amin entitlement to VA benefits for the cause of her husband's death, while noting that Mrs. El-Amin had submitted a confusing brief. Through new counsel, Mrs. El-Amin filed a motion for reconsideration and in the alternative panel review on the basis that the medical opinion relied on by the Board was inadequate because it did not address aggravation. Although piecemeal litigation is not condoned, *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."), the request for reconsideration brought clarity to the original argument and the issue warranted panel review because the outcome now appeared to be reasonably debatable. Accordingly, I granted reconsideration and forwarded Mrs. El-Amin's appeal to panel for decision. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990) (finding that a single judge may resolve an appeal if "the case on appeal is of relative simplicity and[, inter alia,] . . . does not apply an established rule of law to a novel fact situation [or] the outcome is not reasonably debatable").

On panel review, I disagree with the conclusion reached by the majority.[2] Succinctly stated, although the examiner's opinion is not perfect, I do not find it limited to direct causation or so unclear as to aggravation that the Board was clearly erroneous in its (1) view of that opinion in the context of the entire record, (2) weighing of all of the record evidence, or (3) decision that Mr. El-Amin's death was not service connected. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)); *see also Thompson v. Gober*, 14 Vet.App. 187, 192 (2000) ("'Perfection is an aspiration, but the failure to achieve it in the judicial process, as elsewhere in life, does not, absent injury, require a repeat performance.'" (quoting *Miles v. M/V Mississippi Queen*, 753 F.2d 1349, 1352 (5th Cir. 1985)); *see also Stallworth v. Nicholson*, 20 Vet.App. 482, 491 (2006) (Lance, J., dissenting) (noting that an "unjustified remand [] only 'perpetuates the hamster-wheel reputation of veterans law'") (quoting *Coburn v. Nicholson*, 19 Vet.App. 427, 434 (2000) (Lance, J., dissenting)).

Nevertheless, I note that this case underscores the need for panel review when – prior to oral argument or panel discussion – the outcome of a case appears reasonably debatable as to the facts. *See Frankel*, 1 Vet.App. at 25-26. Claimants for VA benefits get a one-person review at the agency of original jurisdiction and a one-person review at the Board. Although most of our cases can and should be decided by a single judge, *Frankel* does not limit panel review to questions of law and there should be little hesitation to send a case to panel when the result could be reasonably debatable. *Id.*; *see also Washington v. Nicholson*, 19 Vet.App. 362, 372-75 (2005) (Kasold, J., concurring in part and dissenting in part) (disagreeing on the weighing of the facts).

---

[2] Although I disagree with the ultimate decision of the majority, I concur in their recognition of the superior oral advocacy of counsel for both parties.