Citation Nr: 1527814 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 09-48 957 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to service connection for hypertension, to include as secondary to service-connected diabetes mellitus and posttraumatic stress disorder (PTSD), and as due to herbicide exposure.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

David Gratz, Counsel





INTRODUCTION

The Veteran served on active duty from November 1966 to October 1968.

This matter comes before the Board of Veterans' Appeals (Board) from an August 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana.

The Veteran was scheduled to present testimony at a videoconference hearing before a Veterans Law Judge in December 2011. However, the Veteran failed to report to the hearing. As the record does not contain further explanation as to why the Veteran failed to report to the hearing, or a request to reschedule the hearing, the Board deems the Veteran's request for such a hearing to be withdrawn. See 38 C.F.R. § 20.704(d).

Following a June 2013 remand, the Board denied the Veteran's claim for service connection for hypertension in an October 2013 decision. Thereafter, the Veteran appealed to the United States Court of Appeals for Veterans Claims (Court). In a May 2014 Joint Motion for Remand (JMR), the Secretary of VA and the Veteran (the parties) moved the Court to vacate the October 2013 decision as to that issue. The Court granted the JMR in a May 2014 Order. The issue returns to the Board for further consideration.

In September 2014, the Board requested the opinion of a medical specialist from the Veterans Health Administration (VHA). The requested opinion was received in March 2015. In April 2015, the Board informed the Veteran and his representative that it had requested a specialist's opinion in conjunction with the adjudication of his appeal, provided him and his representative a copy of that opinion and indicated that he was entitled to submit additional evidence or argument provided within 60 days of the date of that letter. The Veteran and his representative have since responded, and the 60 day period has expired. Accordingly, the Board will proceed with the consideration of his case.


FINDING OF FACT

The preponderance of the evidence shows that the Veteran's hypertension was not present in service or until many years thereafter and is not related to service or to an incident of service origin, including to his service-connected diabetes mellitus, PTSD as well as his presumed in-service exposure to Agent Orange.


CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for hypertension have not been met. 38 U.S.C.A. §§ 1110, 1137, 1154(a), 5107(b) (West 2002); 38 U.S.C.A. §§ 3.102, 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide notification to the Veteran with respect to establishing entitlement to benefits, and a duty to assist with development of evidence under 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159(b).

The duty to notify was satisfied prior to the initial August 2008 RO decision by a February 2008 letter that informed the Veteran of his duty and the VA's duty for obtaining evidence. The RO also provided adequate notice of how disability ratings and effective dates are assigned. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

VA also has a duty to assist the Veteran in the development of the claims. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all relevant facts have been properly developed, and that all available evidence necessary for equitable resolution of the issue has been obtained. The Veteran's available service treatment and personnel records, VA treatment records, and lay evidence have been obtained.

Additionally, the medical opinions of record for the Veteran's hypertension are adequate. In the July 2008 and July 2013 VA examinations, and in the March 2015 VHA medical opinion, the clinicians used their expertise to draw conclusions from the totality of the evidence. Their reports discussed the medical and lay evidence of record sufficiently to render complete opinions and rationales. See Monzingo v. Shinseki, 26 Vet.App. 97, 105 (2012); see also Nieves-Rodriguez v. Peake, 22 Vet.App. 295, 301 (2008).

This claim was remanded by the Board for additional development in June 2013. There has been substantial, if not full, compliance with the Board's remand directives, insofar as VA has requested additional treatment records and lay statements. Additionally, VA obtained additional medical opinions in July 2013 and March 2015. D'Aries v. Peake, 22 Vet. App. 97 (2008); Stegall v. West, 11 Vet. App. 268 (1998).

The Veteran has not indicated there are any additional records that VA should obtain on his behalf. Thus, the Board finds that all reasonable efforts were made by VA to obtain evidence necessary to substantiate the Veteran's claim, and no further assistance to develop evidence is required.

Service Connection

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); see also Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table).

Service connection may also be established for disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a) (2014). Further, a disability which is aggravated by a service-connected disability may be service-connected to the degree that the aggravation is shown. 38 C.F.R. § 3.310 (2013); Allen v. Brown, 7 Vet.App. 439 (1995); El-Amin v. Shinseki, 26 Vet.App. 136 (2013) (holding that an examiner's finding that a Veteran's alcoholism was "related to" factors other than his service-connected PTSD was not sufficient to permit the Board to conclude that the PTSD did not aggravate his alcoholism).

Where a veteran served on active duty for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, such as hypertension, to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. However, the presumption is inapplicable in this case because the most probative evidence of record does not show that the Veteran manifested hypertension to a degree of 10 percent within one year from the date of termination of service.

The Veteran contends in his December 2007 claim that his hypertension began in June 2006, and is related to service. In a June 2015 statement, the Veteran's representative asserts that medical literature links hypertension to PTSD, diabetes mellitus, and herbicide exposure; that the Veteran's PTSD, diabetes mellitus, and herbicide exposure, either singly or in the aggregate, caused the Veteran's hypertension; and that the March 2015 VHA specialist's opinion is inadequate because he provides no definition for the term "essential hypertension," and relies on a prior inadequate opinion.

The most probative evidence shows that the Veteran's hypertension did not begin in service. Specifically, his service treatment records include no complaints, diagnosis, or treatment of hypertension. Further, the Veteran denied ever experiencing high blood pressure in his October 1968 Report of Medical History, and a clinician found in an October 1968 Report of Medical Examination that the Veteran's heart and vascular system were normal at separation from service. Although the Veteran's diagnosis of hypertension predates June 2006-see, e.g., October 2003 and February 2004 VA treatment records-it was rendered decades after his October 1968 separation from service.

The most probative evidence also shows that the Veteran's hypertension does not result from his service, or from his service-connected diabetes mellitus or PTSD. With respect to a nexus between hypertension and service, including any exposure to herbicides therein, the July 2013 VA examiner opined that the Veteran's hypertension has no nexus to service. The examiner based that conclusion on the Veteran's documented normal blood pressure readings at entrance to and separation from service, his statement denying high blood pressure at separation from service, and the absence of hypertension from separation in October 1968 until October 2003. Similarly, the March 2015 VHA specialist opined that the Veteran's hypertension was less likely than not incurred in or caused by his military service, including by acknowledged exposure to herbicides in Vietnam. The VHA specialist based his opinion on the fact that the Veteran did not have hypertension or elevated blood pressure in service; that his hypertension is essential, which is a type not caused by herbicide exposure; and that while recent data suggests an increased risk of hypertension with Agent Orange exposure in some veterans, this applies only at the highest exposures, and this is a risk factor but not a cause.

With respect to secondary service connection between hypertension and diabetes mellitus, the July 2013 VA examiner opined that the Veteran's hypertension is less likely than not proximately due to or the result of his diabetes mellitus. The examiner based that conclusion on the fact that urinalysis testing shows that the Veteran does not have diabetic nephropathy, and that diabetic nephropathy is the precursor to diabetic-related hypertension. The examiner further explained that without nephropathy, there is no hypertension secondary to or aggravated by the diabetes. Similarly, the March 2015 VHA specialist opined that the Veteran's hypertension was less likely than not proximately due to or the result of his diabetes mellitus. The VHA specialist predicated his opinion on the rationale that "Hypertension is caused by diabetes...where the diabetes has advanced to the point that there is significant kidney dysfunction with nephritic range proteinuria. The Veteran does not have this condition." The VHA specialist further opined that the Veteran's hypertension was not aggravated by his diabetes mellitus because his hypertension has remained well-controlled on minimal, and at some points no medication, and as such there has been no progression (worsening) of his hypertension.

With respect to secondary service connection between hypertension and PTSD, the March 2015 VHA specialist opined that the Veteran's hypertension was less likely than not proximately due to or the result of his PTSD because:

Neither PTSD, nor any mental health condition is capable of causing the anatomic or physiologic abnormalities that would cause hypertension. PTSD and HTN...have no causative relationship. Stress can raise the blood pressure on an episodic basis, but this is not causing hypertension, it is a physiologic response that is normal.

The VHA specialist further opined that the Veteran's hypertension was not aggravated by his PTSD because his hypertension has remained well-controlled on minimal, and at some points no medication, and as such there has been no progression (worsening) of his hypertension.

With respect to the assertion from the Veteran and/or his representative that medical literature links hypertension to the Veteran's service-connected PTSD, diabetes mellitus, and herbicide exposure, the Board finds that their application of this literature to the Veteran's specific case warrants less probative weight than the conclusions reached by the VA examiner and VHA specialist. Specifically, in a June 2015 brief, the Veteran's representative referred to "medical references and citations provided by this service in the past, specifically as they relate to the effect of sleep impairment (PTSD) and glucose intolerance/affect on the vascular system (DMII [diabetes mellitus, type II and] herbicides)." However, neither the Veteran nor his representative have provided competent evidence showing that the Veteran's own sleep impairment and/or glucose intolerance levels caused his hypertension to manifest, or aggravated it beyond the natural progress of the disease. Indeed, measuring the extent of the Veteran's sleep impairment and glucose intolerance and their impact on his hypertension is complex in nature, and beyond the competence of lay persons. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed.Cir. 2010); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). By contrast, the VA examiner and VHA specialist cited the Veteran's test results in reaching their respective conclusions. Thus, the Board finds that their medical opinions warrant greater probative weight.

With respect to the Veteran's representative's July 2015 contention that the Veteran's PTSD, diabetes mellitus, and herbicide exposure, either singly or in the aggregate, aggravated or "caused the Veteran's blood pressure readings to rise to the level where the condition was diagnosable," the Board finds that this assertion warrants less probative weight than the conclusions reached by the VHA specialist. First, the Veteran's representative assumes as a predicate for his argument that the VHA specialist "errs in his opinion where he does not consider the blood pressure readings prior to them becoming sufficient to diagnose the disorder." To the contrary, the VHA specialist specifically found that "The Veteran did not have hypertension or elevated blood pressures in service." Thus, he did consider the blood pressure readings prior to them becoming sufficient to diagnose the disorder. Second, the fact that the VHA specialist found that the Veteran's herbicide exposure, diabetes mellitus, or PTSD did not cause or aggravate his hypertension does not constitute evidence that he did not consider their effects on the Veteran's blood pressure readings. Indeed, the VHA specialist specifically explained that "PTSD, diabetes and herbicide exposure are not causative of hypertension. The aggregate of conditions that are not causative does not change anything; the aggregate effect is still no causation." As to the question of aggravation, the VHA specialist found that "there has been no progression [worsening] related to hypertension in this Veteran." The Veteran's representative's suggestion that the moment that the Veteran's blood pressure increased to the point of hypertension must have been due to service or to service-connected diabetes mellitus or PTSD assumes the answer to its own questions without refuting the VHA analysis. Consequently, the Board finds that the Veteran's contention is without merit.

With respect to the Veteran's representative's July 2015 contention that the March 2015 VHA specialist erred by referencing and relying on prior opinions, it is unclear to which "prior opinion" the representative objects. The plain language of the 2015 VHA opinion suggests that the specialist is referencing his own responses to questions 1 through 3; if so, his reference and reliance does not constitute error, as those opinions included competent rationales, as discussed above. If, however, the Veteran's representative believes that the VHA opinion references the July 2013 VA examination report, then this is also insufficient to show error because that opinion is not inadequate as to the questions of direct causation or secondary service connection due to diabetes mellitus. Although the July 2013 examination does not consider secondary service connection due to PTSD, this fact does not render the remainder of the examination inadequate, and it is not error for the VHA specialist to reference or rely on it.

With respect to the Veteran's representative's July 2015 contention that the March 2015 VHA specialist erred by "provid[ing] no definition for th[e] term [essential hypertension] beyond the declaration that it is a disability of its own," the Board finds that the VHA specialist provided an adequate explanation for his opinion. Specifically, although the Board acknowledges the sources cited by the Veteran's representative-including the website of the Mayo Clinic, American Heritage, and McGraw-Hill-the Board finds that the VHA specialist persuasively explained that essential hypertension "is the diagnosis in 95 [percent] of cases of hypertension and, by definition, is not secondary to or caused by any other disease, conditions or exposures, including herbicide exposure." Further, although the Veteran's representative asserts that the Mayo Clinic definition of hypertension references factors that could be "traced back to the Veteran's service-connected conditions," he concedes that the site "does not specify whether the risk factors are for essential or secondary hypertension." The Board finds that the VHA specialist's explanation of the Veteran's essential hypertension is more probative than the Veteran's representative's interpretation of the Mayo Clinic's website's stated risk factors both because it is unknown whether they apply to essential or secondary hypertension, and because the VHA specialist has greater medical expertise in making etiological determinations than a layperson. See Winsett v. West, 11 Vet. App. 420 (1998), aff'd 217 F.3d 854 (Fed.Cir. 1999) (where conflicting opinions are of record, the Board can ascribe greater probative weight to one opinion over another, provided that a rational basis is given).

The Board finds that the July 2013 VA examiner's opinion and the March 2015 VHA opinion are the most probative of record. Those opinions constitute competent medical evidence because those physicians are qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. 38 C.F.R. § 3.159(a)(1). Also, the Board finds that their etiological opinions are credible based on their internal consistency and their duty to provide truthful opinions. The Board further finds that their opinions are most probative because they considered the Veteran's medical records and discussed his medical history, provided unequivocal and conclusive opinions, and offered clear reasoning demonstrating that the Veteran's hypertension is unrelated to service, or to his service-connected diabetes mellitus or PTSD. 38 C.F.R. § 3.303.

In sum, the Board finds that the most probative evidence fails to link the Veteran's hypertension to service (including herbicide exposure therein), or to his service-connected diabetes mellitus or PTSD. Accordingly, the benefit of the doubt doctrine does not apply, and service connection for that disorder is not warranted. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Service connection for hypertension is denied.



____________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs