﻿Citation Nr: AXXXXXXXX
Decision Date: 05/02/19 Archive Date: 05/02/19

DOCKET NO. 180601-312
DATE: May 2, 2019

ORDER

1. Entitlement to an initial compensable evaluation for hypertension is denied.

2. Entitlement to service connection for obstructive sleep apnea (OSA) is denied.

REMANDED

3. Entitlement to service connection for left middle cerebral artery infarct (claimed as stroke), as secondary to service-connected hypertension, is remanded.

4. Entitlement to service connection for seizures (also claimed as epilepsy), as secondary to service-connected hypertension, is remanded.

5. Entitlement to a total disability evaluation based on individual unemployability (TDIU) due to service-connected disabilities is remanded.

FINDINGS OF FACT

1. Hypertension has not been manifested by diastolic pressure predominantly 100 or more, systolic pressure predominantly 160 or more, or a history of diastolic pressure predominantly 100 or more and requiring continuous medication.

2. The Veteran’s obstructive sleep apnea was not incurred during active duty or otherwise related to active duty.

CONCLUSIONS OF LAW

1. The criteria for an initial compensable disability rating for hypertension have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1-4.14, 4.104, Diagnostic Code 7101 (2018).

2. The criteria for service connection for obstructive sleep apnea have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1978 to August 2000.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. The Veteran elected to participate in RAMP in April 2018.

1. Entitlement to an initial compensable evaluation for hypertension.

Disability ratings are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). The percentage ratings in the Rating Schedule represent the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. The percentage ratings are generally adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the disability.

Diagnostic Codes (DCs) are assigned by the rating officials to individual disabilities. DCs provide rating criteria specific to a particular disability. If two DCs are applicable to the same disability, the DC that allows for the higher disability rating applies. See 38 C.F.R. § 4.7 (2018). When a question arises as to which of two ratings apply under a particular DC, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. See id. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of a veteran. 38 C.F.R. § 4.3.

In deciding claims, it is the Board’s responsibility to evaluate the entire record on appeal. See 38 U.S.C. § 7104(a) (2012). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence submitted by the Veteran or on her behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Rather, the Board’s analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claims. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).]

The Veteran asserts that an initial compensable evaluation is warranted for his service-connected hypertension.

The Veteran’s hypertension is evaluated under DC 7101, which provides a 10 percent rating for diastolic pressure predominantly 100 or more, or systolic pressure predominantly 160 or more, or; minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. A 20 percent rating is assigned for diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more. A 40 percent rating is assigned for diastolic pressure predominantly 120 or more. Lastly, a 60 percent rating is assigned for diastolic pressure predominantly 130 or more. 38 U.S.C. § 4.104, DC 7101.

During the April 2015 Disability Benefits Questionnaire (DBQ) for hypertension, the Veteran’s blood pressure was 146/88 (systolic/diastolic). 

At the October 2017 VA examination for hypertension, the Veteran’s blood pressure readings were 122/80, 121/85, and 124/70. The average blood pressure reading was 122/78. The examination report reflects that the Veteran’s treatment plan included taking continuous medication, specifically diltiazem 180 mg daily. The examiner noted that the Veteran did not have a history of diastolic blood pressure evaluation to predominantly 100 or more. The examiner determined that the Veteran did not have any other pertinent findings, complications, conditions, signs, or symptoms related to his hypertension. 

A review the Veteran’s VA treatment records do not reflect a history of diastolic pressure predominantly 100 or more and his systolic pressure has not been predominantly 160 or more.

The Board notes it may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria. See Jones v. Shinseki, 26 Vet. App. 56, 62-63 (2012). However, VA has contemplated the effects of medication as a factor to be considered when rating hypertension under DC 7101. Thus, any ameliorative effects of the Veteran’s blood pressure medication were not discounted in arriving at this decision. See McCarroll v. McDonald, 28 Vet. App. 267, 271-73 (2016) (holding that Jones does not apply to DC 7101). Therefore, while the Veteran is on continuous medication to control his hypertension, a 10 percent rating requires that the Veteran be on continuous medication and have a history of diastolic pressure predominantly 100 or more. As noted, the objective evidence fails to support diastolic blood pressure of predominantly 100 or higher during the appeal period. 

Accordingly, the evidence does not show that an initial compensable rating is warranted for the service-connected hypertension. 38 U.S.C. § 4.104, DC 7101. As the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply, and the Veteran’s claim for an increased rating is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.

2. Entitlement to service connection for obstructive sleep apnea (OSA).

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Establishing service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

The Veteran contends that service connection for obstructive sleep apnea is warranted because it is related to active duty and reported that it was diagnosed within one year of separation from active duty. See April 2016 notice of disagreement.

The Agency of Original Jurisdiction (AOJ) found that the Veteran has a current diagnosis of obstructive sleep apnea. Thus, there is evidence of a current disability.

The question in this case is whether a causal relationship or nexus exists between the Veteran’s obstructive sleep apnea and his active duty.

The Board has carefully reviewed the evidence of record, including service treatment records and post-service medical records and finds that the preponderance of the evidence is against a finding that OSA had its onset in service or is otherwise due to service. The Veteran’s service treatment records are silent for any diagnosis, symptoms, or treatment of a sleep disorder. Further, the August 2000 Report of Medical Examination at service separation reveals normal clinical evaluations of the “mouth and throat” and the “lungs and chest” and no sleep disorders are noted by the examiner. In the accompanying Report of Medical History, the Veteran indicated that he was in “pretty good” health and that he was not taking any medication at the time. The Veteran specifically denied that he had “been a sleep walker;” a history of “shortness of breath,” “pain or pressure in chest,” “frequent trouble sleeping,” and “periods of unconsciousness;” and illness or injury other than noted on the separation examination report. The Board accords high probative value and credibility to this document, as the Veteran completed it contemporaneously with service. Thus, at the time of the Veteran’s separation from service, he was not complaining of symptoms indicative of obstructive sleep apnea. 

Further, while the evidence, particularly a June 2001 sleep study resulted in a diagnosis of OSA, supports the Veteran’s statement that he was diagnosed within one year of separation from service, OSA is not a chronic disease subject to presumptive service connection. 38 C.F.R. §§ 3.307, 3.309. Within the June 2001 sleep study, the examiner documented that “over the last eight months [the Veteran’s] wife tells him that he stops breathing at night.” The examiner also wrote that the Veteran reported feeling excessively tired over the last six months. Eight months prior to June 2001 is October 2000 (six month is December 2000), which is after the Veteran’s service discharge. The facts documented in the June 2001 sleep study tend to show that the onset of sleep apnea happened after service discharge and is evidence against a finding that sleep apnea had its onset in service.

There are numerous post-service medical records reflecting complaints and treatment for OSA. However, these records do not directly provide a positive nexus regarding the onset, etiology, or relationship of OSA, to military service. The Veteran has asserted that his OSA is related to service, however, has not offered probative and competent evidence establishing a nexus between his OSA and service. Lay evidence may be competent to establish medical etiology or nexus. However, “VA must consider lay evidence but may give it whatever weight it concludes the evidence is entitled to.” See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). A diagnosis of OSA requires specialized training for determinations as to diagnosis and causation, and is therefore, not susceptible to lay opinions on etiology. Therefore, the Board finds that the lay assertions proffered by the Veteran lack probative value.

Absent competent, credible, and probative evidence of a nexus between the Veteran’s service and his OSA, the Board finds that his current OSA was not incurred in service and it is not otherwise related to service. See 38 U.S.C. § 5107(a). Accordingly, service connection for OSA is not warranted.

REASONS FOR REMAND

One of the effects of the AMA is to narrow the set of circumstances in which the Board must remand appeals to the Agency of Original Jurisdiction (AOJ) for further development instead of immediately deciding them directly. Nevertheless, even under the AMA, the Board still has the duty to remand issues when necessary to correct a pre-decisional duty-to-assist error. See Pub L. No. 115-55 section (2)(d); 38 C.F.R. § 20.802(a).

The Board finds that the failure of the VA examiner in October 2017 to provide opinions on aggravation amounts to a pre-decisional duty-to-assist error, as discussed in further detail below.

Service connection may be granted for a disability that is proximately due to, or the result of, a service-connected disability. See 38 C.F.R. § 3.310(a) (2018). The controlling regulation has been interpreted to permit a grant of service connection not only for disability caused by a service-connected disability, but for the degree of disability resulting from aggravation of a non-service-connected disability by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995). In other words, service connection may be granted for a disability found to be proximately due to, or aggravated by, a service-connected disease or injury.

The Board notes that secondary service connection on the basis of aggravation may be granted only when there is an increase in severity of the nonservice-connected disability beyond a medically established baseline due to the service-connected disability. The regulation specifically states that VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established. 38 C.F.R. § 3.310(b). This baseline is to be established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. Id.

3. Entitlement to service connection for left middle cerebral artery infarct (claimed as stroke), as secondary to service-connected hypertension, is remanded.

The Veteran asserts that service connection for left middle cerebral artery infarct (claimed as stroke) is warranted as secondary to his service-connected hypertension.

In October 2017, the Veteran was afforded a VA medical examination and an opinion was provided on the Veteran’s claimed left middle cerebral artery infarct with aphasia. The examiner opined that it is less likely than not (less than 50 percent probability) proximately due to or the result of the Veteran’s service-connected hypertension. The examiner provided the rationale that there is no medical nexus and “per medical review,” it is most likely due to a cardioembolic event.

In January 2018, an addendum VA opinion was provided that the Veteran’s cerebrovascular accident with residual aphasia is less likely than not caused by or related to the Veteran’s service-connected hypertension. The examiner provided the rationale that it is due to non-service-connected chronic atrial fibrillation with a cardioembolic event resulting in left middle cerebral artery infarct. Further, she indicated that despite Dr. O’s sympathetic opinion, dated May 2017, she did not concur and concurred/agreed with the October 2017 VA opinion.

When VA undertakes to obtain an examination, it must ensure that the examination and opinion therein is adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007). In review of the VA opinions provided in October 2017 and January 2018, the Board finds the opinions to be inadequate for adjudication purposes. While the examiners discussed secondary causation, opinions as to aggravation of the Veteran’s claimed left middle cerebral artery infarct with aphasia and its residuals by the service-connected hypertension were not provided. The U.S. Court of Appeals for Veterans Claims (Court) has indicated that findings of “not due to,” “not caused by,” and “not related to” a service-connected disability are insufficient to address the question of aggravation under 38 C.F.R. § 3.310(b). El-Amin v. Shinseki, 26 Vet. App. 136, 140 (2013). An opinion, with adequate rationale, on whether the Veteran’s claimed left middle cerebral artery infarct with aphasia and its residuals was aggravated by his service-connected hypertension is necessary; therefore, a remand is in order as this is a pre-decisional duty-to-assist error.

4. Entitlement to service connection for seizures (also claimed as epilepsy), as secondary to service-connected hypertension, is remanded.

The Veteran asserts that service connection for seizures (also claimed as epilepsy) is warranted as secondary to his service-connected hypertension.

In October 2017, the Veteran was afforded a VA medical examination and an opinion was provided on the Veteran’s claimed seizures. The examiner opined that it is less likely than not (less than 50 percent probability) proximately due to or the result of the Veteran’s service-connected hypertension. The examiner provided the rationale that per neurologist Dr. C., it is more likely due to left middle cerebral artery stroke (cardioembolic etiology).

When VA undertakes to obtain an examination, it must ensure that the examination and opinion therein is adequate. Barr, 21 Vet. App. 303. In review of the VA opinion provided in October 2017, the Board finds the opinion to be inadequate for adjudication purposes. While the examiner discussed secondary causation, she did not provide an opinion as to aggravation of the Veteran’s claimed seizures and its residuals by the service-connected hypertension. The Court has indicated that findings of “not due to,” “not caused by,” and “not related to” a service-connected disability are insufficient to address the question of aggravation under 38 C.F.R. § 3.310(b). El-Amin, 26 Vet. App. at 140. An opinion, with adequate rationale, on whether the Veteran’s claimed seizures and residuals was aggravated by his service-connected hypertension is necessary; therefore, a remand is in order as this is a pre-decisional duty-to-assist error.

Entitlement to a TDIU rating is remanded.

A determination with respect to the claims for service connection for 1) left middle cerebral artery infarct (claimed as stroke) and 2) seizures (also claimed as epilepsy); both as secondary to service-connected hypertension, may have an impact upon consideration of the issue of entitlement to TDIU on appeal; the Board finds that these issues are inextricably intertwined. The appropriate remedy where a pending claim is inextricably intertwined with a claim currently on appeal is to defer the claim on appeal pending the adjudication of the inextricably intertwined claim. As such, Board consideration of the merits of the Veteran’s TDIU claim is deferred pending adjudication of the Veteran’s claims for service connection for 1) left middle cerebral artery infarct (claimed as stroke) and 2) seizures (also claimed as epilepsy).

The matters are REMANDED for the following action:

1. Return the Veteran’s claims file to the October 2017 VA examiner who performed the examination and provided the opinion for the claimed left middle cerebral artery infarct (claimed as stroke) or to a qualified medical professional if the examiner is unavailable, to provide an addendum opinion. If the examiner finds that a physical examination is necessary, then schedule an examination. If an examination is scheduled, any indicated evaluations, studies, and tests deemed to be necessary by the examiner should be performed.

The VA examiner’s attention is drawn to the following:

• The Veteran is service connected for (1) right total knee arthroplasty; (2) left total knee arthroplasty; (3) limited motion of the arm at shoulder level, left shoulder; (4) recurrent dislocation of the scapulohumeral joint with infrequent episodes and guarding of movement only at shoulder level, left shoulder; (5) recurrent left shoulder dislocation; (6) degenerative joint disease right knee; (7) degenerative joint disease left knee; (8) unstable scar associated with degenerative joint disease left knee; (9) hearing loss, left ear; (10) maxillary sinusitis; (11) ano fissure; (12) hypertension; (13) scar associated with degenerative joint disease right knee; and (14) scar associated with recurrent left shoulder dislocation.

• The Veteran contends that left middle cerebral artery infarct (claimed as stroke) and residuals is the result of his service-connected hypertension.

• In a May 2017 letter, Dr. C.A.O. stated that the Veteran has a long-standing history of hypertension that dated back to his active duty days and subsequently had developed atrial fibrillation and suffered a significant stroke, leading to permanent disability. He opined that the Veteran’s hypertension directly contributed to his atrial fibrillation and stroke. See VBMS entry with document type, “Medical Treatment Record - Non-Government Facility,” receipt date 05/25/2017.

• In a June 2017 letter, Dr. J.A.C. stated that the Veteran was evaluated and treated for localization related epilepsy that occurred as a result of left middle cerebral artery stroke that occurred in 2014. It is also noted that the Veteran continued to have moderate disability from his stroke, to include language disturbance. See VBMS entry with document type, “Medical Treatment Record - Non-Government Facility,” receipt date 07/05/2017.

• Of record is the medical article “Let’s Talk About High Blood Pressure and Stroke.” See VBMS entry with document type, “Correspondence,” receipt date 03/08/2018.

• Of record is the October 2017 VA examination report and opinion (p. 16) for the claimed left middle cerebral artery infarct (claimed as stroke). The examiner concluded that left middle cerebral artery infarct with aphasia was less likely than not proximately due to or the result hypertension. She wrote that there was “no medical nexus” and that per medical review, it was most likely due to a cardioembolic event. See VBMS entry with document type entitled “C&P Exam,” received 11/06/2017, on pages 10-24.

• Of record is the January 2018 addendum VA opinion for the claimed left middle cerebral artery infarct (claimed as stroke). (This is a different examiner than the October 2017 examiner.) This examiner wrote that it was less likely than not that the Veteran’s cerebrovascular accident with residual aphasia was caused by or related to the Veteran’s service-connected hypertension. She concluded that it was most likely due to non-service-connected atrial fibrillation with a cardioembolic event resulting in left middle cerebral artery infarct. The examiner added that her opinion was based on an extensive review of the available medical record documentation. She stated she did not concur with the May 2017 private opinion but concurred with the October 2017 VA opinion. See VBMS entry with document type entitled “C&P Exam,” received 01/16/2018.

• The examiner’s review of the record is NOT restricted to the evidence listed above. This list is provided in an effort to assist the examiner in locating potentially relevant evidence.

The examiner is asked to answer the following questions:

a) Is the left middle cerebral artery infarct (claimed as a stroke) and its residuals, at least as likely as not (50 percent or greater likelihood) caused by service-connected hypertension?

b) If the answer to a) is negative, is the left middle cerebral artery infarct (claimed as stroke) and its residuals, at least as likely as not (50 percent or greater likelihood) aggravated by service-connected hypertension?

c) If the examiner finds that service-connected hypertension aggravated the Veteran’s left middle cerebral artery infarct (claimed as a stroke) and its residuals, the examiner is asked to state whether there is medical evidence created prior to the aggravation or at any time between the time of aggravation and the current level of disability that shows a baseline for the residuals of left middle cerebral artery infarct prior to aggravation. If the examiner is unable to establish a baseline for the residuals of left middle cerebral artery infarct prior to the aggravation, he or she should state such and explain why a baseline cannot be determined.

Please explain your answers by citing to supporting clinical data and/or medical literature, as deemed appropriate.

A full rationale must be provided for all medical opinions given. If the examiner is unable to provide an opinion without resorting to mere speculation, he or she should explain why this is so. The examiner shall then explain whether the inability to provide a more definitive opinion is the result of a need for more information and indicate what additional evidence is necessary, or whether he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s).

2. Return the Veteran’s claims file to the October 2017 VA examiner who performed the examination and provided the opinion for the claimed seizures (also claimed as epilepsy), or to a qualified medical professional if the examiner is unavailable, to provide an addendum opinion. If the examiner finds that a physical examination is necessary, then schedule an examination. If an examination is scheduled, any indicated evaluations, studies, and tests deemed to be necessary by the examiner should be performed.

The VA examiner’s attention is drawn to the following:

• The Veteran is service connected for (1) right total knee arthroplasty; (2) left total knee arthroplasty; (3) limited motion of the arm at shoulder level, left shoulder; (4) recurrent dislocation of the scapulohumeral joint with infrequent episodes and guarding of movement only at shoulder level, left shoulder; (5) recurrent left shoulder dislocation; (6) degenerative joint disease right knee; (7) degenerative joint disease left knee; (8) unstable scar associated with degenerative joint disease left knee; (9) hearing loss, left ear; (10) maxillary sinusitis; (11) ano fissure; (12) hypertension; (13) scar associated with degenerative joint disease right knee; and (14) scar associated with recurrent left shoulder dislocation.

• The Veteran contends that seizures (also claimed as epilepsy) and its residuals are the result of his service-connected hypertension.

• In a May 2017 letter, Dr. C.A.O. stated that the Veteran has a long-standing history of hypertension that dated back to his active duty days and subsequently had developed atrial fibrillation and suffered a significant stroke, leading to permanent disability. He opined that the Veteran’s hypertension directly contributed to his atrial fibrillation and stroke. See VBMS entry with document type, “Medical Treatment Record - Non-Government Facility,” receipt date 05/25/2017

• In a June 2017 letter, Dr. J.A.C. stated that the Veteran was evaluated and treated for localization related epilepsy that occurred as a result of left middle cerebral artery stroke that occurred in 2014. It is also noted that the Veteran continued to have moderate disability from his stroke, to include language disturbance. See VBMS entry with document type, “Medical Treatment Record - Non-Government Facility,” receipt date 07/05/2017.

• Of record is the October 2017 VA examination report and opinion (p. 29) for seizures (also claimed as epilepsy). The VA examiner found that acute generalized seizures were less likely than not proximately due to or the result of the Veteran’s hypertension. The examiner noted that she spoke to a VA neurologist, who said it was more likely due to the left middle “cerebral artery stroke (cardioembolic etiology).” See VBMS entry with document type entitled “C&P Exam,” received 11/06/2017, on pages 24-33.

• The examiner’s review of the record is NOT restricted to the evidence listed above. This list is provided in an effort to assist the examiner in locating potentially relevant evidence.

While the Board has provided some of the relevant facts above, the examiner is to review the entire record, examine the Veteran if determined necessary, and then answer the following questions:

a) Are seizures (also claimed as epilepsy) and its residuals, at least as likely as not (50 percent or greater likelihood) caused by service-connected hypertension?

b) If the answer to a) is negative, are seizures (also claimed as epilepsy) and its residuals, at least as likely as not (50 percent or greater likelihood) aggravated by service-connected hypertension?

c) If the examiner finds that service-connected hypertension aggravates the Veteran’s seizures (also claimed as epilepsy) and its residuals, the examiner is asked to state whether there is medical evidence created prior to the aggravation or at any time between the time of aggravation and the current level of disability that shows a baseline for the residuals of seizures. If the examiner is unable to establish a baseline for the residuals of seizures prior to the aggravation, he or she should state such and explain why a baseline cannot be determined.

Please explain your answers by citing to supporting clinical data and/or medical literature, as deemed appropriate.

A full rationale must be provided for all medical opinions given. If the examiner is unable to provide an opinion without resorting to mere speculation, he or she should explain why this is so. The examiner shall then explain whether the inability to provide a more definitive opinion is the result of a need for more information and indicate what additional evidence is necessary, or whether he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s).

3. The AOJ should adjudicate the remaining claims on appeal.

 

 

A. P. SIMPSON

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD D. Cheng, Associate Counsel