Citation Nr: 1617290 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 11-31 718A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUES

1. Entitlement to service connection for a vestibular disorder, to include as secondary to service-connected coronary artery disease and/or tinnitus.

2. Entitlement to service connection for hypertension as secondary to service-connected mood disorder and/or coronary artery disease.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

K.C. Spragins, Associate Counsel



INTRODUCTION

The Veteran had active service in the United States Army from December 1969 to July 1971.

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from rating decisions dated from the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin.

The Board notes that the Veteran requested a hearing in his December 2011 VA Form 9. However, the Veteran subsequently withdrew this request in an August 2014 statement. Thus, there are no outstanding Board hearing requests.

In a June 2015 decision, the Board denied entitlement to service connection for PTSD. The Board then remanded the remaining two issues for additional development and adjudication. The case has since been returned to the Board for appellate review.

This appeal was processed using the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this case should take into consideration the existence of these records.

The issue of entitlement to service connection for hypertension as secondary to service-connected mood disorder and/or coronary artery disease is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's current vestibular disorder, diagnosed as benign paroxysmal positional vertigo, was not demonstrated in active service, and was not made worse by or caused by his service-connected coronary artery disease or tinnitus.
CONCLUSION OF LAW

A vestibular disorder, diagnosed as benign paroxysmal positional vertigo, was not incurred or aggravated by active service, and such disorder is not proximately due to or aggravated by service-connected coronary artery disease or tinnitus. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

The notice requirements were met in this case by a November 2010 and May 2011 letter. These letters collectively notified the Veteran of the information and evidence needed to substantiate and complete a claim for service connection on a direct and secondary basis, to include notice of what part of the evidence he should provide, what part VA will attempt to obtain, and how disability ratings and effective dates are determined. Furthermore, the requisite notice was provided prior to the initial adjudication of the claim in June 2011. Accordingly, the duty to notify has been satisfied as to the issue decided herein.

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. 3.159(c), (d). This duty to assist contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that the VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (c)(4). In this case, VA obtained the Veteran's service treatment records, and all relevant, identified, and available post-service treatment records. The Veteran was also afforded a VA examination in connection his claim in September 2015.

The Board also acknowledges that the Veteran reported receiving Social Security Administration (SSA) disability benefits during an unrelated March 2011 VA examination. However, the Veteran indicated that he received these benefits as a result of arthritis; and the record does not otherwise suggest that these records are relevant to his service connection claim for a vestibular disorder. As such, the Board concludes that the Veteran's SSA records need not be obtained. See Golz v. Shinseki, 590 F.3d 1317, 1323 (Fed. Cir. 2010) (determining that there is no duty to obtain SSA records when there is no evidence that they are relevant). 

In the Board's June 2015 remand, the AOJ was directed to obtain any outstanding VA treatment records. The record reflects that the AOJ acquired updated VA treatment records and associated them with the claims file. The remand additionally required the AOJ to provide the Veteran with a VA examination that addressed the nature and etiology of any diagnosed vestibular disorder. The Veteran was provided with a VA examination in September 2015 that was responsive to the Board instructions. The examiner considered the Veteran's complaints, conducted an appropriate examination, and provided a medical opinion with rationale. As such, the Board finds this VA medical examination, along with the other evidence of record, is adequate to make a determination on the claim. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Accordingly, the Board finds the AOJ has substantially complied with the instructions of the prior remand. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

In light of the foregoing, the Board finds that the VA's duties to notify and assist have been satisfied, and, thus, appellate review may proceed without prejudice to the Veteran.

Law and Analysis

Service connection may be granted for a disability resulting from disease or injury incurred coincident with or aggravated by service. 38 U.S.C.A. § 1110, 1131; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship (nexus) between the present disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F. 3d 1163, 1167 (Fed. Cir. 2004)). The absence of any one element will result in denial of service connection. Coburn v. Nicholson, 19 Vet. App. 247, 431 (2006). 

Service connection may also be granted where a disability is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 48 (1995) (en banc).

In addition, service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 303 (1990).

In this case, the evidence of record clearly shows that the Veteran has a current diagnosis of benign paroxysmal positional vertigo. See September 2015 VA examination. 

Turning to the question of in-service injury or disease, the Board initially notes that no abnormalities were documented in the clinical evaluation of the December 1969 entrance examination. In the Veteran's December 1969 Report of Medical History, he reported having a frequent or severe headache and a history of a head injury. The physician's summary noted that the Veteran had received a concussion in 1966, and the reported headaches were treated with aspirin. During service, the service treatment records are silent as to any complaints, treatment, or diagnoses related to a vestibular disorder.

Following the Veteran's separation from service, the earliest available report of dizziness was documented in a December 2002 record from the Gunderson Clinic of Chiropractic. The Veteran later reported in a June 2008 VA treatment record that he had experienced dizziness for the past twenty years. The assessment noted the Veteran's dizziness and stated that labyrinthine disease and a vascular problem needed to be ruled out. In a June 2009 record from Dr. H., the Veteran reported feeling lightheaded and nauseated while performing labor in heat and humidity. The assessment was likely dehydration and a component of heat exhaustion. The record noted that he had chronic problems with a curious head sensation before stating that he could have a vertebrobasilar insufficiency.

In a January 2011 VA treatment record, the Veteran reported that his dizziness symptoms had occurred sporadically since 1982. An audiological consult request documented a provisional diagnosis of vestibular dysfunction. The format of the record included a prompt for the requester to describe dizziness associated with changes in hearing, tinnitus, or aural fullness/pressure or asymmetry. In response, the record noted that the Veteran had chronic tinnitus. Later this month, an assessment of the Veteran's dizziness symptoms was conducted by VA. The record stated that his auditory symptoms included tinnitus. Categories of predisposing factors were listed, and the record noted the Veteran's 1965 head injury and his left total hip arthroplasty. The assessment stated that a differential diagnosis at that time would include cervicogenic dizziness versus a vertebrobasilar insufficiency. The record noted that it was difficult to determine a firm diagnosis as the Veteran's symptoms had been present for twenty years.

During the September 2015 VA examination, the Veteran reported that his dizziness might have started in the 1960's after his head injury and before his entrance to service. However, the Veteran was unsure when the symptoms began. As noted, there were no pertinent findings noted in service treatment records.

The September 2015 examiner opined that it was not likely that the benign paroxysmal positional vertigo was incurred in the Veteran's military service. In support of this opinion, the examiner stated that during service, the Veteran did not experience symptoms of the disorder or an event that would predispose him to the disorder. The Board finds that this opinion is probative as it included an explanation, was based on a review of the claims folder, and supported by the evidence of record. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

Initially, the Board acknowledges the references from the record to the Veteran's head injury prior to service. However, the service treatment records do not reflect, and the Veteran does not contend, that were any manifestations of his vestibular disorder during service. As there were no in-service manifestations of the vestibular disorder, the presumption of soundness does not apply to this case. See Gilbert, 26 Vet. App. at 52.

The Board also notes the Veteran's report from the September 2015 VA examination that his symptoms started before service. The Veteran is competent to report that his dizziness began prior to service. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (holding that a lay witness is competent to testify to that which the witness has actually observed and is within the realm of his personal knowledge). However, once evidence is determined to be competent, the Board must determine whether the evidence is credible. The former, the Court has held, is a legal concept, which is useful in determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997). 

The Board must determine, as a question of fact, both the weight and credibility of the evidence. Equal weight is not accorded to each piece of evidence contained in a record; every item does not have the same probative value. The Board must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence. See Struck v. Brown, 9 Vet. App. 145, 152 (1996); Caluza v. Brown, 7 Vet. App. 498, 506 (1995); Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994); Abernathy v. Principi, 3 Vet. App. 461, 465 (1992); Simon v. Derwinski, 2 Vet. App. 621, 622 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164, 169 (1991). The Veteran's credibility affects the weight to be given to his testimony and lay statements, and it is the Board's responsibility to determine the appropriate weight. See Washington, 19 Vet. App. at 368.

Credibility can be generally evaluated by considering interest, bias, or inconsistent statements, the demeanor of the witness, facial plausibility of the testimony, and the consistency of the witness' testimony. Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). Personal interest may affect the credibility of the evidence. Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991). The Board must analyze the credibility and probative value of the evidence, account for the evidence it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Caluza, 7 Vet. App. at 506 (citing State v. Asbury, 415 S.E.2d 891, 895 (W. Va. 1992). 

The Board finds that the Veteran's most recent assertion from the September 2015 VA examination that his symptoms began before service is not credible and is therefore entitled to less probative weight. First, this contention is undermined by the Veteran's reported uncertainty regarding when he began to experience symptoms. In addition, his statement is contradicted by the Veteran's January 2011 report that his symptoms began in 1982, and his June 2008 statement that his symptoms had only been present for twenty years. Moreover, statements made for the purpose of medical diagnosis or treatment are considered exceptionally trustworthy as the declarant has a strong motive to tell the truth in order to receive a proper diagnosis or treatment. White v. Illinois, 502 U.S. 346, 355-56 (1991); Rucker v. Brown 10 Vet. App. 67, 73 (1997) (observing that, although formal rules of evidence do not apply before the Board, recourse to the Federal Rules of Evidence may be appropriate). In light of this evidence, the Board finds that the Veteran's reported history regarding the onset of his disorder from the September 2015 VA examination is not credible. As such, the most probative evidence supports that symptoms of the Veteran's vestibular disorder began around 1982 at the earliest.

The Board also notes that the Veteran does not contend that his vestibular disorder had its onset during service, and he has not provided a theory as to how the disorder is otherwise directly related to active service. Moreover, the medical evidence of record does not suggest such a relationship. Lay assertions may serve to support a claim for service connection when they relate to the occurrence of events that are observable as a layperson or the presence of a disability or symptoms of a disability that are subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Although the Veteran is competent to describe his symptoms and in-service events, he is not competent to relate his current vestibular disorder to service. This particular inquiry is within the province of trained medical professionals because it involves a complex medical issue and is not capable of lay observation - it is a complex internal process as opposed to an external process or something capable of lay observation, such as ringing in the ears, scars, or varicose veins. As the Veteran is a layperson without the appropriate medical training and expertise, he is not competent to render a probative opinion on a medical matter, such as whether his current vestibular disorder is related to active military service. See Jandreau, 492 F.3d at 1376. 

It is noted that 38 C.F.R. § 3.309(e) provides for presumptive service connection for a disease associated with exposure to herbicide agents. As the Veteran had service in the Republic of Vietnam between January 9, 1962 and May 7, 1975, his exposure to herbicide agents is presumed. See 38 C.F.R. § 3.307(a)(6)(iii). However, benign paroxysmal positional vertigo is not listed as one of the presumptive diseases. Moreover, neither the Veteran nor the other evidence of record has indicated that his vestibular disorder is related to his in-service herbicide exposure. As a result, service connection is not warranted on this basis.

The Board finds that direct service connection is not warranted as the preponderance of the evidence weighs against finding a nexus between the Veteran's current vestibular disorder and active service. For this reason, there is not reasonable doubt to be resolved in the Veteran's favor on the matter of direct service connection. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53. 

The remaining question is whether the Veteran's benign paroxysmal positional vertigo is proximately due to or aggravated by his service-connected coronary artery disease and/or tinnitus. In addressing this matter, the September 2015 VA examiner opined that it was not likely that the benign paroxysmal positional vertigo was caused or aggravated by tinnitus or coronary artery disease. The examiner explained that coronary artery disease was unrelated to benign paroxysmal positional vertigo as they were anatomically separate. The examiner also stated that tinnitus was unrelated to benign paroxysmal positional vertigo.

The VA examiner reviewed the claims file, including the service treatment records and the post-service medical records, as well as the Veteran's own reported history. He offered a rationale for the provided opinion that is supported by the evidence of record. As the examiner based his opinion on clinical data and other rationale, the Board finds this opinion to be probative. Bloom v. West, 12 Vet. App. 185, 187 (1999). 

As noted above, lay assertions may serve to support a claim for service connection. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau, 492 F.3d 1372. Although the Veteran is competent to describe his symptoms and in-service events, he is not competent to relate his current benign paroxysmal positional vertigo to his coronary artery disease or tinnitus. This particular inquiry is within the province of trained medical professionals because it involves a complex medical issue of a relationship between two disorders and is not capable of lay observation - it is a complex internal process as opposed to an external process or something capable of lay observation, such as ringing in the ears, scars, or varicose veins. As the Veteran is a layperson without the appropriate medical training and expertise, he is not competent to render a probative opinion on a medical matter, such as whether his current benign paroxysmal positional vertigo is related to coronary artery disease or tinnitus. See Jandreau, 492 F.3d at 1376.

Based on the foregoing, the Board finds that the most probative evidence establishes that there is no relationship (causation or aggravation) between the Veteran's benign paroxysmal positional vertigo and his service-connected coronary artery disease or tinnitus. Therefore, the benefit of the doubt doctrine is not available for application. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet App. 49, 53-56 (1990).


ORDER

Service connection for a vestibular disorder, diagnosed as benign paroxysmal positional vertigo, to include as secondary to service-connected coronary artery disease and/or tinnitus, is denied.


REMAND

The Board finds that a remand is necessary to obtain an adequate VA medical opinion in compliance with the directives of the June 2015 Board remand. See Stegall v. West, 11 Vet. App. 268 (1998) (finding that a remand by the Board confers on the appellant the right to compliance with its remand orders). 

The June 2015 remand instructed the AOJ to provide the Veteran with a VA examination and opinion that addressed his service connection claim for hypertension. The remand instructions asked the examiner opine as to whether the claimed hypertension was either caused or aggravated by the Veteran's service-connected mood disorder, or the medications used to treat the Veteran's service connected disabilities. The Board notes that the Veteran has not asserted, and the evidence has not raised, the theory of entitlement to service connection for hypertension on a direct basis. During a subsequent September 2015 VA examination, the Veteran was diagnosed with hypertension. The examiner stated that while some studies suggested an association between mental health disorders and the development of hypertension, findings of an association were distinguishable from evidence of causation. He noted that mental health conditions were not recognized as a secondary cause of hypertension. In addition, the Veteran was not taking the types of medications that caused temporary elevations in blood pressure.

While this opinion is responsive to the question of causation, the Board does not find that the rationale sufficiently addresses the aggravation prong of secondary service connection. In a secondary service connection claim, a medical opinion that a disorder is not the result of an already service-connected disability does not address the issue of aggravation. El-Amin v. Shinseki, 26 Vet. App. 136, 140-41 (2013). Furthermore, the record shows that the Veteran, through his representative, has a raised a new theory of entitlement to service connection. In the March 2016 Informal Hearing Presentation, the Veteran's representative asserted that his hypertension was caused by his service-connected myocardial infarction. The Board finds that the representative was referencing the Veteran's service-connected disability of "coronary artery disease, status post myocardial infarction and two stent placements." The Board must consider all theories of entitlement if raised by the evidence of record, applying all relevant laws and regulations. Szemraj v. Principi, 357 F.3d 1370, 1375-76 (Fed. Cir. 2004). Consequently, a remand is necessary to obtain a medical opinion that addresses this new theory of entitlement.

Moreover, the Board notes that the Veteran's representative has identified nine different internet articles that address the potential relationship between hypertension and a mental health disorder. See October 2014 Informal Hearing Presentation; March 2016 Informal Hearing Presentation. On remand, the examiner must consider these articles and address them in the provided opinion.

The Board also notes that the Veteran reported receiving Social Security Administration (SSA) disability benefits for arthritis. See March 2011 VA examination. However, there is no indication from the Veteran's report and the other evidence of record that these records are relevant to his service connection claim for hypertension. The Board consequently finds that it is unnecessary to obtain the Veteran's SSA records. See Golz, 590 F.3d at 1323.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for his hypertension. After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate these records with the claims file. 

The AOJ should also secure any outstanding, relevant VA medical records, to include records from the VA Great Lakes Health Care System dated since October 2014. 

2. After the preceding development is completed, obtain a VA medical opinion from a qualified examiner on the etiology of the Veteran's hypertension. The claims file must be made available to the examiner. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions. A clear explanation for all opinions based on specific facts for the case as well as relevant medical principles is needed. If an examination is deemed necessary, one must be provided.

The Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptoms. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner must provide an opinion as to the following questions: 

a) Whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's service-connected mood disorder caused the Veteran's hypertension.

b) Whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's service-connected mood disorder permanently aggravated the Veteran's hypertension.

c) Whether it is at least as likely as not (a 50 percent or greater probability) that the medications used to treat the Veteran's service-connected disabilities, to include mood disorder, caused the Veteran's hypertension.

d) Whether it is at least as likely as not (a 50 percent or greater probability) that the medications used to treat the Veteran's service-connected disabilities, to include mood disorder, permanently aggravated the Veteran's hypertension.

e) Whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's service-connected coronary artery disease status post myocardial infarction and two stent placements caused the Veteran's hypertension.

f) Whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's service-connected coronary artery disease status post myocardial infarction and two stent placements permanently aggravated the Veteran's hypertension.

Regardless of the conclusion reached, the examiner must specifically consider and discuss the following: (1) the 7 internet articles that are cited in the October 2014 Informal Hearing Presentation; and (2) the 2 internet articles that are citied in the March 2016 Informal Hearing Presentation.

3. Review the examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

4. After completing the above actions, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs