http://www.va.gov/vetapp16/Files3/1626422.txt

Citation Nr: 1626422 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 10-31 764A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California

THE ISSUES

1. Entitlement to a rating in excess of 30 percent for service-connected skin disorder (currently identified as dermatophytosis (previously dermatitis, fungal)).

2. Entitlement to service connection for a chest/rib disorder, to include accessory pectoralis major muscle.

3. Entitlement to service connection for a gastrointestinal disorder.

4. Entitlement to service connection for a low back disorder.

5. Entitlement to service connection for bilateral hearing loss.

REPRESENTATION

Appellant represented by: American Red Cross

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

John Kitlas, Counsel

INTRODUCTION

The Veteran served on active duty from April 1962 to April 1964.

This matter is before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran provided testimony at a hearing before the undersigned Veterans Law Judge (VLJ) in March 2015. A transcript of this hearing is of record.

In June 2015, the Board, in pertinent part, remanded the current appellate claims for further development. This case has now been returned to the Board for further appellate consideration.

For the reasons addressed in the REMAND portion of the decision below, the Board finds that further development is still required regarding the skin disorder and gastrointestinal disorder claims. Accordingly, these claims are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The competent medical and other evidence of record reflects the Veteran currently has the chest disorder of residual intercostal bursitis/fibrosis as a result of his active service.

2. The competent and credible evidence of record reflects it is at least as likely as not the Veteran developed a chronic low back disorder as a result of his active service.

3. The competent medical and other evidence of record does not reflect the Veteran currently has a hearing loss disability of the left ear as defined by VA regulations.

4. The preponderance of the competent medical and other evidence of record is against a finding the Veteran's current hearing loss disability of the right ear was incurred in or otherwise the result of his active service.

CONCLUSIONS OF LAW

1. The criteria for a grant of service connection for the chest disability of residual intercostal bursitis/fibrosis are met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

2. The criteria for a grant of service connection for a chronic low back disorder are met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

3. The criteria for a grant of service connection for hearing loss are not met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.385 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Preliminary Matters

The Veteran essentially contends that he developed recurrent chest and low back pain, as well as hearing loss, while on active duty; and he maintains he had no such problems prior to service. Among other things, he has indicated that he developed back problems from carrying heavy loads while on active duty. He has also indicated that his hearing loss is due to in-service noise exposure, and has described the circumstances thereof to include at his March 2015 hearing. Further, he reported hearing problems in the 1960s, shortly after his separation from service. He maintains that other people noted these problems as well. Although he acknowledged post-service industrial noise exposure he also reported having ear protection during that time.

The Board notes the Veteran has not otherwise identified any deficiency regarding the development of hearing loss claim. Further, he has not challenged the competency of VA examiners who have evaluated his hearing loss claim in October 2008 and August 2015. In addition, the Veteran reported in a statement received in October 2015 that he had no further information or evidence to submit in support of his case. Accordingly, the Board need not search for, or address, any such argument. See Scott v. McDonald, 789 F. 3d 1375 (Fed. Cir. 2015). The Board will therefore proceed to the merits of the appeal.

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the appellant or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (The Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claims. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (Noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

General Legal Criteria

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). 

Service connection may also be established for certain chronic diseases such as arthritis and organic diseases of the nervous system such as sensorineural hearing loss that are present to a compensable degree within the first post-service year. See 38 C.F.R. §§ 3.307, 3.309(a). 

Further, service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a).

Analysis - Chest/Rib Disability

As indicated above, the Veteran reported he developed a growth and recurrent pain of the chest while on active duty; and that he had no such problems prior to service.

Initially, the Board observes that there was no indication of any chest impairment on the Veteran's November 1961 pre-induction examination; nor was there any indication of such on a concurrent Report of Medical History. He was subsequently treated for chest wall muscle discomfort in November 1963. Chest X-ray was negative, and his complaints were attributed to most likely accessory pectoralis muscle. On a March 1964 Report of Medical History completed in conjunction with his separation examination, the Veteran reported he had experienced pain or pressure in chest. Nevertheless, no disability was indicated on the separation examination itself in light of these complaints.

VA medical examination conducted in January 1965, in pertinent part, diagnosed the Veteran with muscle, right pectoralis major. However, it was previously determined that this diagnosed condition was considered a congenital or developmental defect, and not a disability or injury under the law. See 38 C.F.R. 
§§ 3.303(c), 4.9. 

In June 2015, the Board found, in essence, that the nature and etiology of the Veteran's claimed chest/rib disorder was not clear from the evidence of record and remanded for a competent medical examination and opinion to resolve this matter. The subsequent August 2015 VA examination diagnosed the Veteran with the chest disorder of residual intercostal bursitis/fibrosis, and noted that it affected Muscle Group XXI whose function was noted as respiration and that it was part of the thoracic muscle group. Moreover, the VA examiner opined it was at least as likely as not (50 percent or greater probability) that this diagnosed disability was incurred in or caused by the claimed in-service injury, event or illness. In support of this opinion, the examiner noted the Veteran's in-service treatment, and stated that the current examination was consistent with residual fibrosis, a common finding in the setting of a previous soft tissue injury.

The Board notes that the claim was denied below because the examiner did not diagnose residual right intercostal mass. However, nothing in the record refutes the August 2015 VA examiner's opinion that the Veteran currently has residual intercostal bursitis/fibrosis. Further, in light of the benefit of the doubt provisions of 38 U.S.C.A. § 5107(b), an accurate determination of etiology is not a condition precedent to granting service connection; nor is "definite etiology" or "obvious etiology." Alemany v. Brown, 9 Vet. App. 518 (1996). Moreover, there is nothing in the record which reflects this diagnosis is that of a congenital defect so as to preclude service connection pursuant to the provisions of 38 C.F.R. 
§§ 3.303(c), 4.9. See also Quirin v. Shinseki, 22 Vet. App. 390, 394 (2009) (discussing VAOPGCPREC 82-90). 

Resolving all reasonable doubt in favor of the Veteran, the Board finds that the competent medical and other evidence of record reflects the Veteran currently has the chest disorder of residual intercostal bursitis/fibrosis as a result of his active service. Therefore, service connection is warranted for this disability.

Analysis - Low Back Disorder

In this case, the Board notes that, as with the chest/rib disorder claim, there was no spine impairment noted on the Veteran's November 1961 pre-induction examination; nor was there any indication of such on a concurrent Report of Medical History. X-rays were subsequently taken of the dorsal and lumbosacral spine in May 1963 due to complaints of upper lumbar ache. There was no significant bony abnormality nor evidence of malalignment. However, there was evidence of mild anterior wedging of T-ll. Although there does not appear to be any subsequent treatment for back problems while on active duty, on a March 1964 Report of Medical History completed in conjunction with his separation examination, the Veteran reported he had swollen or painful joints. Nevertheless, no disability was indicated on the separation examination itself in light of these complaints. In pertinent part, his spine continued to be evaluated as normal.

VA medical examination conducted in January 1965 found, in pertinent part, that the Veteran had shortening of left lower extremity with compensatory scoliosis of the lumbar spine; and stated that residuals of back injury was not found. Subsequent private medical records dated in November 1966 note the Veteran had left sacroiliac sprain, but did not comment on the etiology of this disability. 

The record reflects the claimed low back disorder was previously denied on the basis that the in-service complaints were acute and transitory in nature, healing without residual disability. Further, an August 2015 VA examiner opined that the current low back disorder was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness. In support of this opinion, the examiner stated, in pertinent part, that that the in-service treatment was not consistent with a post-traumatic or chronic inflammatory process; and described how current findings were also not consistent with a post-traumatic process.

Despite the foregoing, the Board cannot ignore the fact the Veteran has reported recurrent low back problems such as pain since active service. As mentioned above, there is no evidence of back problems prior to service, and he was treated for back problems while on active duty. Further, there are notations of such in the post-service medical records which support these contentions. For example, the Veteran reported low back pain at VA examinations for his service-connected skin disorder in August 1968, March 1972, and August 1978; and that are records noting treatment for such in the 1980s, 1990s, and 2000s. The Board also notes the Veteran reported at the August 1968 VA skin examination that he injured his back during service, and in April 1981 that he had had low back pain "for a long time." As these remarks indicating a recurrent low back problems of long duration were made in the context of receiving treatment, the Board finds they add to the credibility of the Veteran's contentions. Moreover, while the August 2015 VA examination concluded the current findings were not post-traumatic in origin, this rationale does not otherwise preclude a chronic disability originating during active service.

The Board further notes that the August 2015 VA examination diagnosed the Veteran, in pertinent part, with degenerative arthritis of the spine. The law provides that if a condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection if the disability is one that is listed in 38 C.F.R. § 3.309, and arthritis is one of the listed disabilities. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Here, the Veteran has credibly reported continuity of symptomatology since service, and there is supporting evidence of such in the medical records. Although arthritis was not demonstrated on in-service X-rays, or the January 1965 VA examination, there were abnormal findings noted with respect to the spine.

The Board acknowledges that there are references to post-service back injuries in the medical records on file; to include in February 1985, December 1990 and August 2001. However, that does not change the fact that the first indication of such complaints appears to be during active service and that he continued to have such complaints in the 1960s and 1970s, as noted on VA skin examinations; and prior to the noted post-service injuries. Moreover, as stated above, an accurate determination of etiology is not a condition precedent to granting service connection; nor is "definite etiology" or "obvious etiology." Alemany, supra. Further, under the law "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." 
Gilbert, supra. Entitlement need not be established beyond a reasonable doubt, by clear and convincing evidence, or by a fair preponderance of the evidence. Under the benefit of the doubt doctrine established by Congress, when the evidence is in relative equipoise, the law dictates that the appellant prevails. Id. 

In view of the foregoing, and resolving all reasonable doubt in favor of the Veteran, the Board finds the competent and credible evidence of record reflects it is at least as likely as not the Veteran developed a chronic low back disorder as a result of his active service. Therefore, service connection is warranted for this disability.

Analysis - Hearing Loss

The Board reiterates the Veteran has reported in-service noise exposure, and that people noted shortly after his separation from service that he had developed hearing problems. However, for the purpose of applying the laws administered by VA, impaired hearing is considered a disability when the auditory threshold in any of the frequencies 500, 1,000, 2,000, 3,000, or 4,000 Hertz is 40 decibels or greater; or when the auditory threshold for at least three of the frequencies 500, 1,000, 2,000, 3,000, or 4,000 Hertz is 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. Further, the Court has indicated that the threshold for normal hearing is between 0 and 20 decibels and that higher thresholds show some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). When audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a "disability" at that time, he may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service. Hensley, 5 Vet. App. at 160. In short, competent medical testing is required to determine whether one has a hearing loss disability for VA purposes, as well as evidence of hearing loss pursuant to Hensley, supra.

In this case, the Board finds that the Veteran does not have a hearing loss disability of the left ear pursuant to 38 C.F.R. § 3.385. For example, an October 2008 VA audiological evaluation revealed pure tone thresholds, in decibels, as follows:

HERTZ

500
1000
2000
3000
4000
Average
RIGHT
15
25
30
20
50
31
LEFT
10
15
5
5
10
9

Speech recognition scores were 96 percent for the right ear, and 100 percent for the left ear. 

The more recent August 2015 VA audiological evaluation revealed pure tone thresholds, in decibels, as follows:

HERTZ

500
1000
2000
3000
4000
Average
RIGHT
20
30
25
25
45
31.25
LEFT
10
20
20
25
25
22.5

Speech recognition scores were 94 percent for the right ear, and 96 percent for the left ear. 

A review of the record does not otherwise demonstrate the Veteran has been shown to have a hearing loss disability as defined by VA regulations during the pendency of this case. See McClain v. Nicholson, 21 Vet. App. 319 (2007). Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C. §§ 1110, 1131; and see Brammer v. Derwinski, 3 Vet. App. 223 (1992). In Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997), it was observed that 38 U.S.C.A § 1131, as well as other relevant statutes, only permitted payment for disabilities existing on and after the date of application for such disorders. The Federal Circuit observed that the structure of these statutes "provided strong evidence of congressional intent to restrict compensation to only presently existing conditions," and VA's interpretation of the law requiring a present disability for a grant of service connection was consistent with the statutory scheme. Degmetich, 104 F.3d at 1332; and see Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998) (holding VA's interpretation of the provisions of 38 U.S.C.A § 1110 to require evidence of a present disability to be consistent with congressional intent); Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (the law limits entitlement for service-related diseases and injuries to cases where the underlying in-service incident has resulted in a disability). Simply put, in the absence of proof of present disability there can be no valid claim. 

Regarding the hearing loss disability of the right ear, the Board notes that the first competent medical evidence of such appears to be years after the Veteran's separation from service. In pertinent part, the Board notes there does not appear to be any treatment for hearing problems in the service treatment records; the Veteran did not indicate any such impairment on the March 1964 Report of Medical History completed concurrent with his separation examination; and the ears were evaluated as normal on both the separation examination itself as well as the January 1965 VA examination. The Board also notes that audiological evaluation conducted as part of the March 1964 separation examination revealed pure tone thresholds, in decibels, as follows:

HERTZ

500
1000
2000
3000
4000
6000
RIGHT
5 (20)
0 (10)
5 (15)
X
10 (15)
X
LEFT
5 (20)
0 (10)
0 (10)
X
-5 (0)
X

(NOTE: Prior to November 1967, audiometric results were reported in standards set forth by the American Standards Association (ASA). Those are the figures on the left of each column and are not in parentheses. Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison, the ASA standards have been converted to ISO-ANSI standards and are represented by the figures in parentheses. In pertinent part, this conversion requires the following additions to audiological results: 15 at 500 Hertz; 10 at 1000 Hertz; 10 at 2000 Hertz; 10 at 3000 Hertz; and 5 at 4000 Hertz; and 10 at 6000 Hertz.)

The Board further notes that the first competent medical evidence of a hearing loss disability of the right ear pursuant to 38 C.F.R. § 3.385, or evidence of Hensley hearing loss, was years after his separation from service. Consequently, service connection is not warranted pursuant to the presumptive provisions of 38 C.F.R. §§ 3.307, 3.309(a). Moreover, the Court has indicated that the normal medical findings at the time of separation from service, as well as the absence of any medical records of a diagnosis or treatment for many years after service can serve as probative evidence against the claim. See Mense v. Derwinski, 1 Vet. App. 354, 356 (1991); see also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The Board also notes that both the October 2008 and August 2015 VA examinations contain opinions against the hearing loss disability of the right ear being etiologically linked to service, to include the in-service noise exposure identified by the Veteran. 

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The initial inquiry in determining probative value is to assess whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case. A review of the claims file is not required, since a medical professional can also become aware of the relevant medical history by having treated a Veteran for a long period of time or through a factually accurate medical history reported by a Veteran. See Id. at 303-04. The second inquiry involves consideration of whether the medical expert provided a fully articulated opinion. See Id. A medical opinion that is equivocal in nature or expressed in speculative language does not provide the degree of certainty required for medical nexus evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). The third and final factor in determining the probative value of an opinion involves consideration of whether the opinion is supported by a reasoned analysis. The most probative value of a medical opinion comes from its reasoning. Therefore, a medical opinion containing only data and conclusions is not entitled to any weight. In fact, a review of the claims file does not substitute for a lack of a reasoned analysis. See Nieves-Rodriguez, 22 Vet. App. at 304; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions."). 

Initially, the Board notes that VA examiners are presumed qualified to render competent medical opinion(s); and, as noted above, the Veteran has not challenged the competency of the October 2008 and August 2015 VA examiners who evaluated hearing loss claim. See Rizzo v. Shinseki, 580 F.3d 1288 (Fed. Cir. 2009). Both examiners indicated familiarity with the Veteran's medical history from review of the claims folder and accurate reference to pertinent findings in the record. Neither of these VA examiners expressed their opinions in speculative or equivocal terms; and both supported their opinions with stated rationale to include reference to the lack of findings demonstrating hearing loss for VA purposes in the service treatment records and the normal findings on the January 1965 VA examination. Although the Board previously noted the October 2008 VA examiner would not be aware of the Veteran's contentions at the March 2015 hearing that he had hearing problems shortly after separation from service, the August 2015 VA examiner should have been aware of this information. No competent medical evidence is of record which explicitly refutes the opinions expressed by these VA examiners. Therefore, the Board finds that these examinations are adequate, persuasive, and entitled to significant probative value in the instant case.

For these reasons, the Board concludes that the preponderance of the competent medical and other evidence of record is against a finding the Veteran's current hearing loss disability of the right ear was incurred in or otherwise the result of his active service. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application in the instant case. See generally Gilbert, supra; see also Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001). No other basis for establishing service connection is demonstrated by the evidence of record, to include the secondary service connection provisions of 38 C.F.R. § 3.310. Consequently, the benefit sought on appeal with respect to this claim must be denied.

ORDER

Service connection for the chest disability of residual intercostal bursitis/fibrosis is granted.

Service connection for a low back disorder is granted.

Service connection for hearing loss is denied.
REMAND

In this case, the Board finds that the VA examinations accorded to the Veteran for his skin and gastrointestinal disorders are not adequate for resolution of these claims.

Regarding the skin disorder claim, the Board notes that it is evaluated pursuant to Diagnostic Code 7813, which provides that such disability be evaluated as disfigurement of the head, face, or neck; scars; or dermatitis, depending upon the predominant disability. Diagnostic Code 7806, for evaluation of dermatitis, provides a noncompensable (zero percent) rating be assigned when less than 5 percent of the entire body or exposed areas are affected, and no more than topical therapy was required during the past 12-month period. A 10 percent rating is warranted when at least 5 percent, but less than 20 percent, of the entire body or exposed areas are affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs were required for a total duration of less than 6 weeks during the past 12-month period. A 30 percent rating is warranted when 20 to 40 percent of the entire body or exposed areas are affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs were required for a total duration of 6 weeks or more, but not constantly, during the past 12-month period. The maximum schedular rating of 60 percent is warranted when more than 40 percent of the entire body or exposed areas are affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs were required during the past 12-month period. 38 C.F.R. § 4.118.

The Board notes that a September 2010 VA examination found that the Veteran's service-connected skin disorder covered 1 percent of total body skin area and 3 percent of exposed skin area. The more recent August 2015 VA examination found that it covered between 5 and 20 percent of the total body, and less than 5 percent of the exposed area. In addition, the examinations noted the use of medications, with the August 2015 VA examination noting constant/near constant use of tinnactin. However, it is not clear whether the medications the Veteran has used to treat the skin disorder is a corticosteroid, to include the tinnactin noted on the August 2015 VA examination.

In March 2016, the Court held that the language of Diagnostic Code 7806 explicitly mentions corticosteroids as an example of systemic therapy and does not further distinguish between different types of corticosteroid application. The Court found that corticosteroids constitute systemic therapy without any limitation as to application. Johnson v. McDonald, 27 Vet. App. 497 (2016). More recently, the Court held that the provisions apply to medications that are like or similar to a corticosteroid or other immunosuppressive drug. Warren v. McDonald, No. 13-3161 (U.S. Vet. App. May 10, 2016). Here, it is not clear from the evidence of record whether the medications the Veteran has used to treat his service-connected skin disorder actually is or is otherwise like or similar to a corticosteroid or other immunosuppressive drug so as to warrant a rating in excess of 30 percent under Diagnostic Code 7806. Therefore, a remand is required to obtain clarification on this matter. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991).

With respect to the gastrointestinal disorder claim, the Board notes that opinions expressed by the August 2015 VA examiner are inadequate to determine the etiology of this disability. For example, the examiner opined that the condition claimed was at least as likely as not incurred in or caused by the claimed in-service injury, event or illness. However, the examiner then provided rationale and a statement that it was less likely than not that the current gastrointestinal reflux disease (GERD) was related to service. Further, while this examination included an opinion against the GERD being caused by the service-connected skin disorder, it did not explicitly address the matter of secondary aggravation in accord with Allen, supra. Without such an opinion, this examination is not adequate for resolution of this case. See El-Amin v. Shinseki, 26 Vet. App. 136, 138 (2013). Therefore, a remand is also required to clarify this matter. See Barr, supra; Colvin, supra.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Request the names and addresses of all medical care providers who have treated the Veteran for his skin disorder and gastrointestinal problems since October 2015. Even if the Veteran does not respond, determine if there are any VA medical records for the pertinent period.

After securing any necessary release, obtain those records not on file.

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed of his in-service and post-service gastrointestinal symptomatology; as well as the nature, extent and severity of his service-connected skin disorder symptoms and the impact of the condition on his ability to work. The Veteran should be provided an appropriate amount of time to submit this lay evidence. 

3. After obtaining any additional records to the extent possible, the Veteran's claims folder should be made available to the examiners who conducted the August 2015 VA skin and gastrointestinal examinations for review and clarification of the information contained therein.

In regard to the skin disorder, the respective examiner should clarify whether the medications used to treat the Veteran's service-connected skin disorder actually were or were otherwise like or similar to a corticosteroid or other immunosuppressive drug. If so, the examiner should also comment on the frequency of the use of such during the pendency of this case.

With respect to the gastrointestinal disorder claim, the examiner should clarify whether the opinion expressed in the August 2015 VA examination reflects it was at least as likely as not any current disability was incurred in or otherwise the result of the Veteran's active service. If the examiner states it was not directly related to service, then she should opine whether it is at least as likely as not it was aggravated by the service-connected skin disorder to include the medications used to treat the skin disorder. By aggravation, the Board means a permanent increase in severity that is beyond natural progression.

A complete rationale for any opinion expressed must be provided, to include if the examiner determines an opinion cannot be provided without resort to speculation.

If either of the original examiners is unavailable, then the requested opinion(s) should be obtained by another appropriately qualified clinician. If a new examination(s) is deemed necessary, then it should be conducted.

4. After completing any additional development deemed necessary, readjudicate the issues on appeal in light of any additional evidence added to the records assembled for appellate review. If the benefits requested on appeal are not granted to the Veteran's satisfaction, the Veteran and his representative should be furnished a Supplemental Statement of the Case (SSOC), which addresses all of the evidence obtained after the issuance of the last SSOC in October 2015, and provides an opportunity to respond. 

The case should then be returned to the Board for further appellate consideration, if in order. By this remand, the Board intimates no opinion as to any final outcome warranted.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs