# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-5865

RONALD V. GARNER, APPELLANT,

V.

DAT P. TRAN,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 21, 2020                                     Decided January 26, 2021)

*Zachary M. Stolz*, with whom Brittani L. Howell and April Donahower, were on the brief, all of Providence, Rhode Island, for the appellant.

*Jacqueline Kerin*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Anna Whited*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and MEREDITH and TOTH, *Judges*.

BARTLEY, *Chief Judge*: Veteran Ronald V. Garner appeals through counsel an August 31, 2018, Board of Veterans' Appeals (Board) decision denying service connection for obstructive sleep apnea (OSA), including as secondary to service-connected major depressive disorder (MDD). Record (R.) at 3-8. This appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court, with oral argument, to address what is necessary to reasonably raise the issue of obesity as an intermediate step toward service connection in the causal chain between the veteran's service-connected disabilities and the claimed disability, OSA. This is an issue of first impression, and today we provide guidance to the Board for adjudication of these types of claims.

The Court concludes that the record in this case does not reasonably raise the issue of obesity as an intermediate step toward secondary service connection. Nevertheless, because the Board relied on examinations that were inadequate to allow the Board to make a fully informed decision as to any relationship between the OSA and the veteran's service-connected MDD, we will set aside the August 2018 Board decision and remand the matter for further development and readjudication consistent with this decision.

# I. FACTS

Mr. Garner served on active duty in the U.S. Air Force from June 1972 to May 1992. R. at 1410. He reports that between 1972 and 1973, he worked 12-hour shifts, 7 days a week on the flight line. R. at 3201.

In December 1972, Mr. Garner sought treatment for pain and swelling in both knees. R. at 2619. He was diagnosed with chondromalacia and ordered to light duty. *Id*. In September 1976, Mr. Garner injured his left knee playing football. R. at 2623. The following month, he still had effusion in his left knee and was diagnosed with prepatellar bursitis. R. at 2626. In November 1979, Mr. Garner injured his right ankle playing basketball. R. at 2610, 2612-13. At that time, he was diagnosed with a ligament/tendon strain. R. at 2613.

In November 2010, Mr. Garner filed a claim for service connection for various disabilities, including left knee, right ankle, and left shoulder disabilities. R. at 3877. In December 2011, a VA regional office (RO) granted service connection for, among other things, left knee and right ankle disabilities, assigning a 10% disability evaluation for each condition. R. at 3222-38.

In June 2012, Mr. Garner subsequently sought VA mental health treatment for severe chronic depression, anxiety, labile mood swings, disillusionment, and social withdrawal. R. at 3201. He continued to experience pain and stiffness in his left ankle, knee, and shoulder, and expressed that the resulting limitations from these conditions impacted his mood: "I was once a lot more physically active, but now it depresses me[;] . . . because of my [ankle, knee, and shoulder disabilities,] I can no longer do the things that made my life enjoyable." *Id*. Noting that Mr. Garner was in the process of applying for compensation benefits for his mood disorder, *id*., the VA psychologist opined that Mr. Garner's psychiatric condition was "more likely than not" related to his service-connected disabilities, R. at 3202.

In October 2012, Mr. Garner filed a claim for service connection for a mood disorder as secondary to his service-connected musculoskeletal conditions. R. at 3199. In September 2013, a VA examiner diagnosed an Axis I mood disorder, not otherwise specified (NOS), and under Axis III, noted hypertension.[1] R. at 1182-87. In May 2014, the RO granted service connection for a

---

[1] The *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* (DSM-IV), which was in effect in 2013, used a multiaxial system for classifying mental disorders. Axis I referred to clinical disorders and other conditions that may be a focus of clinical attention, while Axis III referred to general medical conditions "that are potentially relevant to the understanding or management of the individual's mental disorder." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 27, 29 (4th ed., text revision 2000). The current version, the DSM-5, uses a nonaxial system. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed., 2013).

mood disorder, NOS, as secondary to service-connected left shoulder osteoarthritis, and assigned a 50% evaluation. R. at 2452-57.

In November 2013, Mr. Garner sought treatment for a sleep disorder. R. at 2516-18. He stated that his wife and daughter described that he would fall asleep and stop breathing. R. at 2517. He reported that he would frequently fall asleep while resting in the evening, and his wife would observe him gasping and choking upon waking. *Id*. Mr. Garner described waking up frequently during the night and experiencing dry mouth in the mornings. *Id*. The physician noted that Mr. Garner's symptoms were suggestive of OSA and ordered a polysomnogram for a definitive diagnosis. *Id*. Testing revealed mild OSA and poor sleep efficiency. R. at 2042.

In February 2014, Mr. Garner filed a claim for service connection for OSA, R. at 2570-72, which the RO denied in June 2014, R. at 2395-96. Mr. Garner timely filed a Notice of Disagreement (NOD), asserting his belief that his OSA was brought on by his service-connected mood disorder. R. at 2327-28.

In September 2015, a VA examiner diagnosed OSA. R. at 2031-32. The examiner opined that the veteran's OSA was less likely than not proximately due to or the result of a service-connected condition, noting that "[e]xtensive review of medical literature[] revealed that mood disorder is not one of the known risk factors" for OSA. R. at 2034. Instead, he indicated that the veteran's risk factors for OSA included "his age, male gender and obesity." *Id*.

In November 2015, a VA mental health examiner noted the veteran's diagnosis of unspecified depressive disorder.[2] R. at 1922. The examiner noted that complaints of pain in multiple sites, including the left shoulder, both feet, and both hands, as well as hypertension and OSA, were relevant to the understanding or management of the veteran's mental health disorder. *Id*. Mr. Garner arrived at the appointment in a hospital wheelchair, but was able to ambulate into the office using a cane. R. at 1926.

That same month, the RO issued a Statement of the Case (SOC) continuing to deny service connection for OSA as secondary to a mood disorder NOS. R. at 1979-2000. Mr. Garner timely appealed the RO's decision, stating that as a result of his OSA he was falling asleep at the wheel and that his breathing would stop. R. at 1824. He noted that his symptoms were worsening and

---

[2] Although Mr. Garner was previously diagnosed with mood disorder NOS, that diagnosis does not appear in the DSM-5; accordingly, his diagnosis was updated in 2015 to unspecified depressive disorder. *See* R. at 1922.

that his activity was limited as a result of his OSA. *Id*. Two months later, he submitted a statement in support of claim reiterating that his condition was worsening. R. at 1813.

In August 2016, Mr. Garner underwent a mental health diagnostic assessment through VA for the continued management of his psychiatric condition, then diagnosed as MDD.[3] R. at 1610-18. The physician noted that Mr. Garner continued to have periods of depression, "perpetuated and precipitated by pain and other medical issues." R. at 1611. The physician indicated that the veteran "struggle[s] with pain and associated physical limitations," *id.*, and recorded Mr. Garner's report of severe pain that he rated a 6 or 7 out of 10, R. at 1614. The physician noted that pain interfered with the veteran's normal daily activities and resulted in decreased physical capacity. *Id*. Finally, the physician documented the veteran's body mass index (BMI) of 31, which is obese. R. at 1615. Mr. Garner declined to participate in the MOVE! (Managing Overweight Veterans Everywhere) weight management/health promotion program. R. at 1615, 1617.

In June 2017, a VA mental health examiner noted Mr. Garner's report that pain related to his knees, shoulders, wrists, and back impacted his mood on a daily basis. R. at 912. The examiner recorded Mr. Garner's statement: "I used to be a strong individual and well controlled, but now feel worthless. I feel broken. I'm not half the man I used to be." R. at 914. The examiner indicated that Mr. Garner's diminished concentration and lack of interest in doing anything were compounded by his physical limitations. *Id*. The examiner noted that the veteran walked with an unsteady gait and at a slow pace, with use of a walking cane. R. at 916.

In November 2017, a VA examiner opined that the veteran's OSA was less likely than not aggravated beyond its natural progression by his service-connected mood disorder. R. at 574-75. The examiner noted that, while Mr. Garner's mood disorder contributes to his insomnia, "it has no effect on the etiology . . . or progression of his sleep apnea[,] which is due to collapse of the oropharyngeal tissue." R. at 575. The RO issued a Supplemental SOC continuing to deny entitlement to service connection for OSA as secondary to MDD. R. at 620-36.

In August 2018, the Board issued the decision currently on appeal. R. at 3-8. The Board reviewed the evidence of record and concluded that there was no link between the claimed disability and the veteran's service or service-connected MDD. R. at 8. The Board stated that the September 2015 and November 2017 examiners made it clear that Mr. Garner's OSA was not

---

[3] By 2016, the veteran's psychiatric diagnosis had been changed to MDD. *See* R. at 1616.

related to service or to his service-connected MDD; rather, OSA was caused by a collapse of the oropharyngeal tissue. R. at 7. The Board noted the September 2015 examiner's statement that mood disorder is not one of the known risk factors for the development of OSA. R. at 6. Instead, the 2015 examiner opined that Mr. Garner's age, male gender, and obesity were all risk factors. R. at 7. The Board also relied on the 2017 examiner's opinion that, although the veteran's MDD contributed to insomnia, it had no effect on the etiology or progression of OSA. R. at 7. The Board acknowledged the 2017 examiner's note that the veteran's claustrophobia was impairing compliance with the continuous positive airway pressure (CPAP) machine, but determined that this was not aggravation of OSA. *Id*. Accordingly, the Board denied Mr. Garner's claim for service connection for OSA as secondary to service-connected MDD. *Id*. This appeal followed.

## II. ANALYSIS

### A. Reasonably Raising Obesity as an Intermediate Step
### Toward Secondary Service Connection[4]

#### 1. The Parties' Arguments

Mr. Garner argues that the Board erred in failing to consider the reasonably raised theory that his service-connected MDD, right ankle, or left knee conditions caused or aggravated his obesity, which in turn caused or aggravated his OSA. Appellant's Brief (Br.) at 15-20. He points to evidence that his service-connected orthopedic (knee and ankle) conditions reduced his physical activity levels and to evidence that his service-connected MDD left him feeling "broken and worthless," lacking motivation to engage in activities that might promote fitness or weight loss. *Id*. at 16 (citing R. at 914). Mr. Garner argues that this evidence, when viewed in conjunction with the September 2015 examiner's opinion that the veteran's obesity was a risk factor for the development of OSA, *see* R. at 2034, as well as evidence that he gained weight over the same period, was sufficient to reasonably raise the theory that his OSA was proximately related to the service-connected conditions, with obesity as the intermediate step between service-connected MDD, right ankle, and left knee conditions and OSA. Appellant's Br. at 16-17. As support for his contentions, Mr. Garner cites to *Alexander v. Shulkin*, No. 16-0799, 2017 WL 2333080 (Vet. App. May 30, 2017), a nonprecedential memorandum decision that remanded the appeal for the Board

---

[4] Although the Court ultimately remands on a different theory of entitlement, that does not render moot the appellant's arguments that the Board also erred with respect to this theory of entitlement and the Court will thus, in its discretion, address the parties' arguments in this regard. *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009).

to address a reasonably raised theory of secondary service connection based on obesity as an intermediary step between the veteran's claimed disability and service-connected disabilities. Appellant's Br. at 19.

The Secretary responds that the record evidence marshaled by Mr. Garner to support such a theory of service connection is "attenuated at best." Secretary's Br. at 13. He argues that there is no evidence connecting Mr. Garner's weight gain of approximately 12-20 pounds over the period of 25 years following service to any of his service-connected disabilities. *Id.* Finally, the Secretary notes that *Alexander* was not a precedential decision. *Id.* at 15. To the extent that the Court might be persuaded by *Alexander*, the Secretary distinguishes the facts of this case, observing that Mr. Alexander experienced extremely severe mobility problems due to his service-connected conditions. *Id.* at 14-15 (citing *Alexander*, 2017 WL 2333080, at *3).

### 2. Governing Law & Application to this Appeal

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. *Romanowsky v. Shinseki*, 26 Vet.App. 289, 293 (2013). In evaluating a veteran's claim, the Board is required to consider all theories of entitlement to VA benefits that are either raised by the claimant or reasonably raised by the record. *DeLisio v. Shinseki*, 25 Vet.App. 45, 53 (2011) ("[T]he Secretary generally must investigate the reasonably apparent and potential causes of the veteran's condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filing."); *Robinson v. Peake*, 21 Vet.App. 545, 555 (2008) (holding that the Board errs when it fails to adequately address all issues expressly raised by the claimant or reasonably raised by the evidence of record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

In *Barringer v. Peake*, the Court concluded that it has jurisdiction to determine in the first instance whether the record reasonably raised a particular issue. 22 Vet.App. 242, 244 (2008). Although in other cases, including *Robinson* and *Lynch v. Wilkie*, we articulated that whether an issue is reasonably raised is essentially a factual question, the Board in those cases did not assess whether a pertinent issue was raised, and the Court proceeded to determine in the first instance whether the issue was reasonably raised before the Board. *Lynch v. Wilkie*, 30 Vet.App. 296, 304-06 (2018); *Robinson*, 21 Vet.App. at 552-57. Notably, the U.S. Court of Appeals for the Federal

Circuit (Federal Circuit) in *Robinson* acknowledged the Court's approach in upholding that decision. 557 F.3d at 1362. Because in Mr. Garner's case the Board did not address whether obesity as an intermediate step toward secondary service connection was reasonably raised, the approach that the Court took in *Lynch* and *Robinson* applies, and the Court will determine in the first instance whether the issue of obesity as an intermediate step was reasonably raised to the Board.[5]

In January 2017, VA's Office of General Counsel issued a precedential opinion addressing the status of obesity for the purposes of establishing entitlement to service connection. VA. Gen. Coun. Prec. 1-2017 (Jan. 6, 2017) [hereinafter G.C. Prec. 1-2017]; *see* 38 U.S.C. § 7104(c) (providing, in relevant part, that the Board is bound by precedential decisions of VA's Office of General Counsel); *see Walsh v. Wilkie*, 32 Vet.App. 300, 305 (2020) (noting that "because [General Counsel] opinions lack the formalities of notice-and-comment rulemaking, the Court defers to them in accordance with their 'power to persuade'" (quoting *Wanless v. Shinseki*, 618 F.3d 1333, 1338 (Fed. Cir. 2010)). The General Counsel noted that obesity per se is not a disease or injury, and therefore, may not be service connected on a direct basis. G.C. Prec. 1-2017 at 1, P 1. However, the General Counsel determined that "[o]besity may be an 'intermediate step' between a service-connected disability and a current disability that may be service connected on a secondary basis under 38 C.F.R. § 3.310(a)." *Id*. at 2, P 5.

The General Counsel's opinion addressing obesity as an intermediate step provides guidance for the adjudication of such claims; this guidance received the Court's endorsement as to the soundness of its analysis in *Walsh*. 32 Vet.App. at 305-07. The opinion discusses the hypothetical case of a veteran whose service-connected back disability causes obesity due to lack of exercise; the obesity in turn leads to hypertension. G.C. Prec. 1-2017 at 9, P 14. To decide entitlement to secondary service connection in such a case, the General Counsel advises that the Board would be required to resolve (1) whether the service-connected back disability caused the veteran to become obese; (2) if so, whether obesity, as a result of the service-connected disability, was a substantial factor in causing the claimed secondary disability, hypertension; and (3) whether hypertension would not have occurred but for obesity caused by the service-connected back disability. *Id*. at 9-10, P15. Affirmative answers to these questions would support a determination

---

[5] Under a deferential standard of review, any implied Board conclusion that obesity as an intermediate step toward secondary service connection was not reasonably raised would be determined not to be clearly erroneous, and the end result here would not differ.

of service connection for hypertension secondary to the veteran's back disability. In *Walsh*, we held that the General Counsel opinion requires the Board to consider aggravation in addition to causation in the context of claims where a theory of secondary service connection, with obesity as an intermediate step, is explicitly raised by the veteran or reasonably raised by the record. 32 Vet.App. at 307. Taken together, our holding in *Walsh* and the General Counsel's opinion illustrate the mechanism by which obesity as an intermediate step could result in secondary service connection; however, they do not provide guidance regarding what factual circumstances would give rise to claims for secondary service connection via this theory.

Although the Court has not addressed that issue in a precedential decision, a survey of single-judge decisions reveals factors that the Court has considered relevant to this determination. Review of a broad array of factual circumstances here will help to illuminate the type and quality of evidence that may be sufficient to reasonably raise a theory of secondary service connection via obesity as an intermediate step. *See generally* William L. Reynolds & William M. Richman, *The Non-Precedential Precedent—Limited Publication and No-Citation Rules in the United States Courts of Appeals*, 78 COLUM. L. REV. 1167, 1190 (1978) ("[T]he accumulation of a large number of routine decisions on a discrete point may suggest to courts, practitioners, or scholars that problems exist in that area, problems that may require doctrinal reform."). To that end, we note that considerations that could give rise to a reasonably raised theory of secondary service connection with obesity as an intermediate step may include, but are not limited to, mobility limitations or reduced physical activity as a result of a service-connected physical disability (in particular, orthopedic conditions or chronically painful conditions);[6] reduced physical activity or inability to follow a course of exercise or diet as a result of service-connected mental disability;[7] side effects of medication (e.g., weight gain), where the medication is prescribed for a service-connected disability;[8] treatise evidence suggesting a connection between all or some combination of obesity, service-connected disability, and the claimed condition;[9] lay statements by a veteran

---

[6] *See, e.g.*, *Davis v. Wilkie*, No. 17-1481, 2018 WL 6204582, at *2 (Vet. App. Nov. 29, 2018); *Lanham v. Shulkin*, No. 16-2666, 2018 WL 480539, at *6 (Vet. App. Jan. 19, 2018); *Alexander*, 2017 WL 2333080, at *2-4.

[7] *See, e.g.*, *Milliken v. Wilkie*, No. 18-4155, 2019 WL 4584251, at *2-3 (Vet. App. Sept. 23, 2019); *Simonsen v. Wilkie*, No. 18-2724, 2018 WL 9669512, at *2-3 (Vet. App. Sept. 25, 2018).

[8] *See, e.g.*, *Simonsen*, *supra* note 6.

[9] *See, e.g.*, *Dodson v. Wilkie*, No. 19-0921, 2020 WL 425131, at *4 (Vet. App. Jan. 28, 2020).

attributing weight gain or obesity to the service-connected disability;[10] and statements by treating physicians or medical examiners attributing weight gain or obesity to the service-connected disability.[11]

We do not identify these factors in an attempt to limit any reasonably raised theory of obesity as an intermediate step to a circumscribed set of circumstances. Rather, we note that these considerations encompass a diverse array of factual situations, but share a critical commonality: in each case, there is *some* evidence in the record which *draws an association* or *suggests a relationship* between the veteran's obesity, or weight gain resulting in obesity, and a service-connected condition. *Cf. Robinson*, 21 Vet.App. at 553 (noting that the duty to assist is triggered when "some evidence . . . 'indicates' that the disability 'may be associated' with . . . service" (quoting 38 U.S.C. § 5103A(d)(2)(B))).

In Mr. Garner's case, no such relationship can be found in the record. Although there is evidence demonstrating Mr. Garner has gained weight since service and is now considered obese, *compare* R. at 2676 (1986 service treatment record indicating the veteran's weight of 203 pounds), *with* 3321 (2010 treatment record indicating veteran's weight of 220 pounds and BMI of 31.57), *and* 1649 (2016 orthopedic treatment note indicating veteran's weight of 234.3 pounds and BMI of 31), there is no evidence linking his service-connected orthopedic conditions and resulting mobility limitations to weight gain, *see* R. at 3201 (2012 outpatient treatment note reflecting the veteran's report that he reduced his physical activity due to his service-connected medical conditions, but with no mention of his weight or of weight gain), 1618 (2016 primary care treatment note indicating the veteran regularly exercised for 60 minutes twice weekly).

Similarly, no evidence connects the veteran's service-connected depressive disorder to behaviors associated with weight gain (e.g., difficulties following a course of diet or exercise, or overeating). There are no lay statements by the veteran associating his service-connected conditions specifically with weight gain or obesity. *See* R. at 914 (June 2017 VA Disability Benefits Questionnaire with the veteran's lay statement associating his depressive disorder with a general loss of motivation); *see also* R. at 2328 (October 2014 NOD with the veteran's lay statement associating his OSA with a variety of psychiatric symptoms). And in the veteran's

---

[10] *See, e.g.*, *Lanham*, *supra* note 6.

[11] *See, e.g.*, *Milliken* and *Simonsen*, both *supra* note 7.

extensive treatment records, none of the medical providers of record note any connection between the veteran's service-connected conditions and weight gain or obesity. *See, e.g.,* R. at 1615 (August 2016 treatment record reflecting the veteran's referral to the MOVE! program). We hold that, where, as here, the record reflects only incidental references to the veteran's weight or weight gain, the evidence of record is insufficient to reasonably raise the theory of secondary service connection via obesity as an intermediate step.

### B. Adequacy of the September 2015 and November 2017 VA Examinations as to the Relationship between MDD and OSA

#### 1. The Parties' Arguments

Mr. Garner argues that neither the September 2015 nor the November 2017 VA examinations are adequate for adjudication purposes, and that the Board erred when it relied on those examinations. Appellant's Br. at 8-15. Mr. Garner specifically contends that the examinations are inadequate because each examiner failed to provide sufficient rationale for the conclusion that his service-connected MDD did not aggravate his OSA. Appellant's Br. at 8-15. The Secretary disputes these contentions and urges the Court to affirm the Board decision. Secretary's Br. at 4-11.

#### 2. Adequacy of VA Medical Examinations

When the Secretary undertakes to provide a veteran with a VA medical examination or obtain an opinion, he must ensure that the examination or opinion provided is adequate. *Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007). A VA medical examination or opinion is adequate "where it is based upon consideration of the veteran's prior medical history and examinations," *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007), "describes the disability . . . in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one,'" *id.* (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)), and "sufficiently inform[s] the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion," *Monzingo v. Shinseki*, 26 Vet.App. 97, 105 (2012) (per curiam). *See also Acevedo v. Shinseki*, 25 Vet.App. 286, 293 (2012) ("[A]n adequate medical report must rest on correct facts and reasoned medical judgment so as [to] inform the Board on a medical question and facilitate the Board's consideration and weighing of the report against any contrary reports."); *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 301 (2008) ("[A] medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two."). Of particular

relevance here, a medical examination or opinion that fails to address whether a service-connected disability aggravated the claimed disability is inadequate to inform the Board on the issue of secondary service connection. *El-Amin v. Shinseki*, 26 Vet.App. 136, 140 (2013).

The Court reviews the Board's determination as to the adequacy of a medical examination or opinion under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) (per curiam). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The Board must support its material determinations of fact and law with adequate reasons or bases. 38 U.S.C. § 7104(d)(1); *Pederson v. McDonald*, 27 Vet.App. 276, 286 (2015) (en banc); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for its rejection of material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

### 3. Aggravation and Secondary Service Connection

This Court has explicitly rejected the "permanent worsening" standard in the context of claims for secondary service connection of a non-service-connected injury or disease, holding that "any additional impairment of earning capacity—in non-service-connected disabilities resulting from service-connected conditions, above the degree of disability existing before the increase— regardless of its permanence" is compensable. *Ward v. Wilkie*, 31 Vet.App. 233, 239 (2019); *see* 38 U.S.C. §§ 1110, 1131; *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc). As the Federal Circuit noted in *Saunders v. Wilkie*, 886 F.3d 1356, 1363 (Fed. Cir. 2018), "disability" under section 1110 "refers to the functional impairment of earning capacity, not the underlying cause of said disability."

Here, the Board summarized the examination reports and concluded that the VA opinions carried "significant weight" and that the examiners "made it clear" that the veteran's service-connected MDD did not aggravate the OSA. R. at 7. The Board did not expressly discuss its reasons for finding the VA examinations adequate. Rather, the Board, in relying on these

11

examinations, implicitly found that they were adequate. In other words, the Court is able to discern the Board's reasons from its discussion of the relative probative value. The Court disagrees with the Secretary that the Board's reliance on the 2015 and 2017 examinations was appropriate. *See* Secretary's Br. at 4-11.

These opinions provide no insight into the relevant inquiry, which is whether service-connected MDD aggravated any functional impairment associated with the veteran's OSA. *See Ward*, 31 Vet.App. at 239. Indeed, the Board's summary reveals, and the Secretary concedes, that the September 2015 opinion fails to address aggravation at all: "[E]xtensive review of medical literature[] revealed that mood disorder is not one of the known risk factors for *development* of [OSA]. In the case of the [v]eteran, his risk factors include[] his age, male gender[,] and obesity." R. at 6 (quoting R. at 2034 (emphasis added)); *see* Secretary's Br. at 11. This language focuses on the etiology of the veteran's OSA, rather than any potential relationship between the OSA and the service-connected MDD. *See El-Amin*, 26 Vet.App. at 140. The Board explained that the November 2017 examiner acknowledged that there is a relationship between the veteran's MDD and *insomnia*, but the Board's summary reflects that she similarly focused on the etiology of *OSA*: "'[The veteran's] mood disorder [is] contributing to his insomnia[. H]owever, it has no effect on the *etiology and[/]or progression* of sleep apnea which [is] due to [collapse] of the oropharyngeal tissue.'" R. at 7 (quoting R. at 575). The focus on the underlying cause of the OSA—in this case, the collapse of the oropharyngeal tissue—fails to illuminate whether the veteran's MDD results in any additional functional impairment associated with the OSA. *See Saunders*, 886 F.3d at 1363; *Ward*, 31 Vet.App. at 239.

Therefore, the Court concludes that the Board clearly erred in finding the VA examinations adequate to adjudicate the claim. *See D'Aries*, 22 Vet.App. at 104; *Ardison*, 6 Vet.App. at 407 (holding that the Board errs when it relies on an inadequate medical examination). Consequently, the Court holds that remand is warranted for a VA examiner to address whether the veteran's service-connected MDD caused a functional increase in the severity of his OSA. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("Generally, where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.").

In accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), the Court will not preclude Mr. Garner on remand from presenting to the Board the theory

of service connection for OSA as secondary to his service-connected conditions, with obesity as an intermediate step. That theory of service connection was expressly raised before this Court and the Board is therefore obligated to address it. *See DeLisio*, 25 Vet.App. at 53; *Robinson*, 21 Vet.App. at 553. He may also submit any additional arguments and evidence, including any additional arguments he made to this Court; the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

Upon consideration of the foregoing, the August 31, 2018, Board decision is SET ASIDE, and the matter is REMANDED for further development and readjudication consistent with this decision.